**In re Michael Antonio CANGANELLI,**
**Debtor.**

**Michael Antonio CANGANELLI,**
**Plaintiff,**

v.

**LAKE COUNTY INDIANA DEPART-**
**MENT OF PUBLIC WELFARE,**
**Defendant.**

**Bankruptcy No. 88–61100.**
**Adv. No. 89–6179.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division
at Gary.

Aug. 3, 1991.

John L. Kelly, Merrillville, Ind. and John Hovanec, Lake Station, Ind., for plaintiff-debtor.

Jeff Schlesinger, Gary, Ind., for defendant.

## MEMORANDUM OPINION AND ORDER

### MOTION FOR SUMMARY JUDGMENT

KENT LINDQUIST, Chief Judge.

### I

#### *Statement of Proceedings*

This adversary proceeding came before the Court on a Motion for Summary Judgment filed by the Defendant, Lake County Indiana Department of Public Welfare (hereinafter: "Department"), on February 15, 1990.

By Order of this Court dated February 16, 1990 the Debtor–Plaintiff Michael Antonio Canganelli (hereinafter: "Debtor") was given 15 days to file a written response or answer to said motion and the Department was granted 7 days to file a reply thereto.

On March 6, 1990, the Debtor filed his response and a Counter Motion for Summary Judgment, and the Department was given 15 days to file a written response to the Counter Motion for Summary Judgment by the Debtor. On March 23, 1990, the Department filed its response to the Counter Motion for Summary Judgment.

The Debtor's complaint filed on November 13, 1989 prays that this Court make a determination as to the dischargeability of a debt under § 523(a)(5) owed by the Debtor to the Lake County Department of Welfare (hereinafter: "Department"), pursuant to an Order entered on or about December 5, 1985 by the Lake County, Indiana, Superior Court, Juvenile Division under Cause No. J84–2234. The debt resulted from expenses incurred by the Department while the Plaintiff's daughter was a ward of the state retroactive to July 3, 1984. On November 30, 1987, the Juvenile Court ordered the Debtor to make monthly payments to the Lake County Clerk on said debt.

The *Debtor's* complaint, among other things, disputes the *amount* and reasonableness of the debt for various reasons as set out in rhetorical paragraphs 4, 5 and 6 of his complaint which alleges as follows:

4) The expenditures which are the subject of 3) above were:

a) Not allowed to be monitored by the DEBTOR;

b) Were something close to half of the DEBTOR's total gross income during the period in which the oldest daughter of the DEBTOR was forcibly absented from full-time residency in the home of the DEBTOR;

c) Were more than half the total amount earned and spent during the same period by the DEBTOR for the support of all of the DEBTOR, his wife, the other daughter of the DEBTOR, the two sons of the DEBTOR, and the three stepsons of the DEBTOR;

d) Were something close to twice the average monthly expenditure which the caseworker at the time of the original removal had told the DEBTOR that he might expect, and

e) The DEBTOR was not given any credit against the billings for those period in which the oldest daughter of the DEBTOR was in the home of the DEBTOR on extended visits and during which time no expenditures were being made on behalf of the oldest daughter of the DEBTOR by anyone other than the DEBTOR.

5. The DEBTOR further disputes the reasonableness of any expenditures allegedly made for medical and/or dental needs for the oldest daughter of the DEBTOR, due to two main reasons:

a) They were apparently far higher than the expenditures made for equivalent services by the DEBTOR for the same and other dependents at the same and other times and

b) The actual cost to the DEBTOR would and should have almost nothing out-of-pocket, since the oldest daughter of the DEBTOR was a full-covered dependent under the Health Maintenance Organization insurance plan which the DEBTOR had in effect during most of the period in which the oldest daughter of the DEBTOR was not allowed to live full-time at the home of the DEBTOR.

6. Assuming, *arguendo*, that the Defendant's computation of the total amount which it allegedly spent on behalf of the oldest daughter of the DEBTOR is correct, the DEBTOR calculates that the payments actually made by the DEBTOR reduced the total expenditures outstanding by $150.00, not the mere $90.00 which the Defendant credited to the DEBTOR.

7. DEBTOR totally and completely denies and disputes that the sum which is alleged by the Defendant to be due and owing (whatever the correct sum expended is) ever was, let alone is still due and owing by DEBTOR, since no final determination was ever made about what total amount should be borne by each and/or either of DEBTOR and/or his ex-wife.

The Department's answer filed on December 12, 1989 prayed that the debt be found to be nondischargeable, and raised what it called an affirmative defense in that the Debtor was not entitled to a general discharge pursuant to § 727(a)(8) since he had been granted a discharge on January 13, 1984, or less than six years from the date of the Debtor's present petition. (No formally denominated countercomplaint was filed by the Department in this or any other Adversary Proceeding).

On July 7, 1983, the Debtor filed a petition under Chapter 7 and the Court granted the Debtor a general discharge on January 13, 1984. On July 8, 1988, or five years and one day after his previous chapter 7 petition, the Debtor filed a petition under Chapter 13 which was converted to a Chapter 7 case on August 10, 1989, or six years and 34 days after his previous chapter 7 petition.

One of the debts listed by the Debtor in his verified Schedule A–3 to his Chapter 13 petition was a $46,000.00 unsecured debt owed to the Department. This debt was a result of services provided to the Debtor's daughter from July 3, 1984 to August 14, 1987 while she was a ward of the Department. During the wardship, the Depart-

ment expended $45,081.91 for the Debtor's dependent's board and medical expenses. On November 30, 1987, the Lake County Juvenile Court ordered the Debtor to begin reimbursing the Department by making monthly payments of $50.00 to the Clerk of Lake County. *See,* claim of Department filed in the Debtor's main case on December 5, 1988. It is this debt of $45,081.91, from which the Plaintiff seeks to be discharged in this proceeding pursuant to § 523(a)(5).

The Department's Memorandum of Law in Support of its Motion for Summary Judgment argues first, that § 727(a)(8) prevents the Debtor from receiving a general discharge because the second petition was filed within 6 years of the first Chapter 7 petition, and secondly that the specific debt to the Department is non-dischargeable under 11 U.S.C. § 523(a)(5).

Before this Court can consider whether this specific debt to the Department is dischargeable under § 523(a)(5) in the Debtor's present Chapter 7 proceedings, the Court must first determine whether the Debtor is entitled to a general discharge under § 727(a)(8), notwithstanding the fact that the Debtor filed a petition in a previous chapter 7 case on July 7, 1983, or within six years of both the Chapter 13 petition filed in this case on July 8, 1988 and the order converting this case to one under chapter 7, entered on August 10, 1989. If the Debtor cannot receive a general discharge under § 727, in the case *sub judice* the Court need not entertain the issue of whether the specific debt owed to the Department is dischargeable under § 523(a)(5). If the Debtor is eligible for a general discharge under § 727, the Court must then determine if the specific debt of the Debtor to the Department is dischargeable pursuant to § 523(a)(5) in the Debtor's present Chapter 7 case.

## II
### Conclusions of Law and Discussion
#### A
##### General Principles Relating to Summary Judgment

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

The granting of a motion for summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ The moving party, in making a motion for summary judgment, "has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984).

■ When ruling on a motion for summary judgment, inferences to be drawn from underlying facts contained in such materials as attached exhibits, and depositions must be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1961); *See also, Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215 (7th Cir. 1984).

■ By entering a summary judgment for a party, the court is concluding that based on the evidence upon which the non-moving party intends to rely at trial, no reasonable jury could return a verdict for the non-moving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985); *Weit v. Continental Illinois National Bank & Trust Co.,* 641 F.2d 457, 461 (7th Cir.1981), *cert. den.,* 455 U.S. 988 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

■ Once a moving party has met its initial burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and that the disputed fact is material. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. den.,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Thus, if the movant carries his initial burden the opposing party may not defeat the motion by merely relying on the contentions of its pleadings, but

must produce significant probative evidence to support its position. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *United States v. Pent-R Brooks, Inc.*, 538 F.2d 519 (2nd Cir.1976), *cert. den.* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582.

■ As noted by the Court in the case of *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260 (7th Cir.1986), a response is insufficient to raise a genuine issue of material fact if it is not based on the personal knowledge of the affiant, and where affiant alleges to be without information to admit or deny the allegations contained in the Movant's affidavit, and demands strict proof thereof, at best the response asserts a mere suspicion or theoretical question of fact that is insufficient to raise a genuine issue of fact.

In addition, General Rule 11 as made applicable by Local Bankruptcy Rule B–111 provides as follows:

In determining the motion for summary judgment, the court will assume that the facts as claimed by the moving party are admitted to exist without controversy, except as and to the extent that such facts are actually in good faith controverted in the "statement of genuine issues" filed in opposition to the motion, as supported by the depositions, answers to interrogatories, admissions, and affidavits on file.

In *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987), the Seventh Circuit addressed exactly what a party must demonstrate to show the existence of a genuine issue of fact precluding summary judgment. The Court stated:

A genuine issue for trial only exists when there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party. As the Supreme Court has stated, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." We must not weigh the evidence. Instead, we must see if the nonmovant's evidence is sufficient. In de-

termining whether evidence is sufficient, we must of necessity consider the substantive evidentiary standard of proof, for example, preponderance of the evidence, that would apply at a trial on the merits. In addition, we draw all inferences in favor of the nonmovant. Such inferences, however, must be "justifiable". (Citations and footnote omitted).

■ In reaching its determination, the Court has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried. *Parmelee Transportation Co. v. Keeshin*, 292 F.2d 794 (7th Cir.1961).

■ The Seventh Circuit in *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc) *cert. den.* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), held that to preclude a summary judgment, the non-moving party must show the disputed fact to be material. That is, it must be outcome-determinative under applicable law. Thus, facts not outcome-determinative under applicable law, though in dispute, may permit the entry of a summary judgment. In *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972), the Court stated that, "appellate courts should not look the other way to ignore the existence of the genuine issues of material facts, but neither should they strain to find the existence of genuine issues where none exists." *See also, Kirk v. Home Indemnity Company*, 431 F.2d 554 (7th Cir.1970).

## B

### *Materials to be Considered on Motion for Summary Judgement*

Federal Rules of Civil Practice 56(c) provides as follows:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixing for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the*

*affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. (Emphasis added).

Thus, pursuant to Fed.R.Civ.P. 56(c) the Court may consider all papers of record as specified therein. *Federacion Del Tribunal, etc. v. Torres,* 747 F.2d 35 (1st Cir. 1984); *Allen v. Carlotti,* 400 F.Supp. 1037 (S.D.Fla.1975), *aff'd.,* 552 F.2d 1086 (5th Cir.1977).

■ The Court is obligated to consider not only materials specifically offered in support of the motion, but also all "pleadings, depositions, answers to interrogatories and admissions" properly on file and thus properly before the Court. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention; the Court must consider both before granting a summary judgment. *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406 (5th Cir.1980).

■ The material considered by the Court must be of the type that would be admissible in evidence. Federal Rule of Civil Procedure 56(e) provides in part as follows:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

■ Inasmuch as the summary judgment procedure lacks the safeguards of cross-examination of the affiant, it must be shown that he is competent to testify as to the matters stated, and the facts to which he swears are admissible in evidence. *American Security Co. v. Hamilton Glass Co.,* 254 F.2d 889 (7th Cir.1958); *Midland Engineering Co. v. John A. Hall Constr. Co.,* 398 F.Supp. 981 (N.D.Ind.1975).

■ Supporting Memorandum, not sworn or in affidavit form making factual assertions, even if accompanied by exhibits does not meet the requirements of Rule 56(c), and cannot be relied upon by the Court as establishing a basis for summary judgment. *Macklin v. Butler,* 553 F.2d 525 (7th Cir.1977); *Smith v. Mack Trucks, Inc.,* 505 F.2d 1248 (9th Cir.1974); *Goldman v. Summerfield,* 214 F.2d 858 (D.C.Cir.1954).

The Court in ruling on the motion for summary judgment has considered the following documents that have been filed of record: the complaint, answer and reply, the motion and cross motion for summary judgment and supporting briefs.

### C

*Standard of Proof to be Applied on Motion for Summary Judgment*

■ Finally it should be noted that the Supreme Court in the case of *Anderson, et al. v. Liberty Lobby, Inc. and Willis A. Carto,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) held that in determining whether a factual dispute exists on a motion for summary judgment, the court must be guided by the substantive evidentiary standards of the case that are applicable at trial, and thus in ruling on a motion for summary judgment the Supreme Court held that the court must apply the clear and convincing standard in a case where the actual malice rule applied, and this was thus the standard of proof for such a claim. Here the standard of proof as to the Department is clear and convincing as to its § 523 proceeding, *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985) (§ 523 fraud case) as well as to any assertions that the Debtor

should not be granted a general discharge under § 727. *In re Crawford*, 65 B.R. 378, 380 (C.D.Calif.1986); *In re Cohen*, 47 B.R. 871, 874 (Bankr.S.D.Fla.1985).

 Thus, the court must apply the clear and convincing standard of proof to the Department's Motion on both issues, i.e. that the debt is nondischargeable, and that the Debtor should not receive a general discharge in this adversary proceeding and in testing the sufficiency of the motion for summary judgment.

### D

*General Discharge under § 727(a)(8)*

Before determining whether the Plaintiff's specific debt to the Department is dischargeable pursuant to § 523(a)(5), the Court must first examine § 727(a)(8) in conjunction with § 348(a) since the Debtor previously filed a chapter 7 within six years of the filing of the 13 petition herein. In the event § 727(a)(8) applies, the Debtor may not receive a discharge to any creditor whatsoever let alone the Department. Section § 727(a)(8) provides:

(a) The Court shall grant the debtor a discharge, unless

(8) *the debtor has been granted a discharge under this section,* under section 1141 of this title, or under section 14, 371 or 476 of the Bankruptcy Act, in a case commenced *within six years before the date of the filing of the petition.* (Emphasis supplied).

Pursuant to 11 U.S.C. § 301 a voluntary case is "commenced" by the filing of a petition under such chapter by a debtor that may be a debtor under such chapter.

 The time period in § 727(a)(8) begins to run on the date the first case is commenced, and ends on the date the subsequent case is filed. *In re Marshall*, 74 B.R. 185, 186 (Bankr.W.D.N.Y.1987).

While § 727(a)(8) was enacted in 1978, similar provisions preventing a discharge within six years of a previous case have existed in the bankruptcy laws since 1903. *See* 4 *Collier on Bankruptcy* ¶ 727.11 (L. King, 15th ed.). Collier's states:

There was no comparable provision in the original Act of 1898. In 1903, however, an amendment was added providing for the denial of a discharge if the debtor had "(5) in voluntary proceedings been granted a discharge in bankruptcy within six years."

In 1926 this was altered to read:

"(5) has been granted a discharge in bankruptcy within six years"

The 1926 amendment made it immaterial whether the prior discharge had been granted in a voluntary or an involuntary proceeding.

The Act of 1938 restated the 1926 amendment, but included the confirmation of a composition, or an arrangement or wage earner's plan by way of composition under the Act within six years.

Clause (5) of the Act of 1938 read: "(5) has within six years prior to bankruptcy been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this Act."

In 1952 the clause was amended to read: "(5) in a proceeding under this Act commenced within six years prior to the date of the filing of a petition in bankruptcy had been granted a discharge, or had a composition or an arrangement by way of composition or a wage-earner's plan by way of composition confirmed under this Act."

*The purpose of the 1952 amendment was to make clear that the six year period began to run from the date of the commencement of the prior bankruptcy proceeding; not the date that the discharge or its equivalent was granted.*

Decisions under Section 14c(5) of the former Act will offer assistance in the interpretation of the Code provision.

Section 727(a)(8) may be invoked only when a discharge has been granted in a prior chapter 7 or 11 case under the Code, or a straight bankruptcy, Chapter XI or Chapter XII case under the prior Act. The purpose of the section is to

prevent overly frequent use of liquidation as a means of avoiding debt.

It had been held under the former Act that a court may take judicial notice of a discharge in a prior proceeding and deny a discharge in the second proceeding in the absence of an objection. *Although section 727(a)(8) could be read to permit a sua sponte denial, Bankruptcy Rule 4004(c) seems to preclude such an action. The Rule permits a sua sponte dismissal only if the debtor is not an individual or if the debtor has filed a waiver of discharge. If a discharge is granted because of the absence of a timely objection under section 727(a)(8), that discharge may not be subsequently attacked in a collateral proceeding.*

The fact that a discharge has been granted does not preclude a debtor from again becoming a debtor within six years of commencement of the prior case, although no discharge may be granted in the second proceeding. Refusal of a discharge in the second proceeding because six years have not elapsed since the prior case does not bar a third proceeding more than six years subsequent to the commencement of the first case. Although the contrary has been held, the better view is that in the third proceeding the debtor can be discharged from debts scheduled in the second proceeding.

Section 727(a)(8) expressly provides that if a debtor has been granted a discharge by having a plan confirmed under section 1141 or under Sections 14, 371 or 476 of the former Act in a case commenced within six years before the date of the filing of the petition, he must be denied a discharge on account of the confirmation of a plan in such prior case.

In addition, section 727(a)(9) bars the discharge of a debtor who has been granted a discharge by the confirmation of a plan under former Chapter XIII, or under section 1228 or 1328 of the Code, in a case commenced within six years before the date of the filing of the petition in the case.

However, in the reverse situation, a debtor who has been discharged in a chapter 7 case filed less than six years prior to the commencement of a chapter 13 case is not thereby prevented from obtaining confirmation of a chapter 13 plan, or from obtaining a discharge under section 1328. Instead, the debtor's chapter 13 plan is subject simply to the good faith requirement in section 1325(a)(3) as well as the other confirmation requirements. When the debtor's plan represents a disguised liquidation filed under chapter 13 to avoid section 727, it is likely not to be in good faith. When the debtor's plan proposes some meaningful payment or is otherwise distinguishable from a liquidation, however, it may be confirmed notwithstanding a previous bankruptcy discharge. It would appear that section 1225(a)(3) applies similarly to a chapter 12 debtor.

*Id.* at 727–83–86. (Emphasis supplied).

 Section 727(a)(8) is derived from its predecessor § 14(c)(5) of the Bankruptcy Act (11 U.S.C. § 32). S.Rep. No. 989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5885. The legislative history of § 727 offers no particular insight into its interpretation. However, since § 727(a)(8) is directly derived from 14(c)(5), the legislative history and case law discussing 14(c)(5) is helpful in interpreting § 727(a)(8). 4 *Collier on Bankruptcy*, ¶ 727.11 (15th ed. 1990).[1]

In general, the purpose of § 727(a)(8) (14(c)(5)) is to prevent the use of Chapter 7 to avoid frequent honest debt. *Perry v. Commerce Loan Co.*, 383 U.S. 392, 399, 86 S.Ct. 852, 856–57, 15 L.Ed.2d 827 (1966); *Turner v. Boston*, 393 F.2d 683, 685 (9th Cir.1968); *See also, 4 Collier on Bank-*

---

1. This brings us to the long established rule of statutory construction that in a general revision by codification the revised sections will be presumed to bear the same meaning as did the original sections, unless an intent to change the meaning is clearly and indubitably manifested. And, the proven interpretation of a statute must be deemed to have received legislative approval by the reenactment of a statutory provision without material change. (citations omitted). *In re Mendoza*, 16 B.R. 990, 993–94 (Bankr. S.D.Cal.1982) (discussing § 727(a)(8)).

*ruptcy,* 15th ed. *supra,* ¶ 727.11, and cases cited therein.

■■■ Since the Debtor converted his case from Chapter 13 to 7 on August 10, 1989, or over six years after filing his previous Chapter 7 petition on July 7, 1983, the Court must also examine § 348(a) in order to determine whether to measure the six years from the date of the previous Chapter 7 petition to the date of the filing of the Chapter 13 petition on July 8, 1988, or to the date of conversion to chapter 7 or August 10, 1989. If the date of the original Chapter 13 petition is the petition date, the Debtor is in violation of § 727(a)(8). If the Chapter 7 conversion date is the correct date he is not. Section 348(a) provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, *but, except as provided in subsection (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.* (Emphasis supplied).

The legislative history of § 348(a) states that the date of filing the petition, the commencement of the case, or the order for relief are unaffected by the conversion of a case under one chapter to a case under another chapter with certain exceptions specified in § 348(b) and (c), which are not applicable here. S.Rep. No. 989, 95th Cong., 2d Sess. 48 *reprinted* in 1978 U.S.Code Cong. & Admin.News 5787, 5834. *See also, Resendez v. Lindquist,* 691 F.2d 397, 399 (8th Cir.1982); *In re Meltzer,* 84 B.R. 312, 314 (Bankr.D.Conn.1988); *Matter of Ford,* 61 B.R. 913, 916 (Bankr.E.D.Wis. 1986); *Genova v. Thurman,* 43 B.R. 108, 110 (Bankr.D.Colo.1984). Applying § 348(a) to the Debtor's case requires a finding that for purposes of commencement of the Debtor's case, the date of the filing of the original Chapter 13 petition controls. Therefore, since the Plaintiff filed his Chapter 13 petition on July 8, 1988, the Debtor was not entitled to a discharge because the petition of the Debt-

or in the case in which he received his previous discharge was filed within six years or July 7, 1983 (assuming a timely objection has been filed). *In re Marshall,* 74 B.R. 185, 186 (Bankr.N.D.N.Y.1987). *See also, In re Smith,* 95 B.R. 468, 469 (Bankr.W.D.Ky.1988); *In re Bishop,* 74 B.R. 677, 680–81 (Bankr.M.D.Ga.1987).

In his brief, the Plaintiff cites *In re Hardy,* 287 F.Supp. 40 (S.D.Ohio 1967), a pre-Bankruptcy Code case, as controlling precedent for his case. In *Hardy,* the district court had to determine whether the debtor could convert his chapter 13 case to a straight bankruptcy when the chapter 13 petition was filed within six years of a previous discharge, but the conversion occurred after six years. The court held that the conversion could take place. *Id.* at 42–47. The court held that if the adjudication had to relate back to the filing of the Chapter 13 petition it would be barred by the six year rule, but the court held that no relation back was required under the previous Bankruptcy Act extant at that time. *Id.* at 43–44. However, § 348(a) of the present Bankruptcy Code has been enacted since *Hardy,* and now mandates that the original Chapter 13 petition date controls. Therefore, the debtor was not eligible for a general discharge under § 727(a)(8) even though the case was subsequently converted from Chapter 13 to Chapter 7 on August 10, 1989 or over six years after the previous petition. *See e.g., In re Marshall,* 74 B.R. 185, 186 (Bankr.N.D.N.Y.1987).

■■■ The Plaintiff correctly states that he had the right to file a chapter 13 petition within six years of his previous discharge under chapter 7. *In re Gayton,* 61 B.R. 612, 613 (9th Cir.BAP 1986). There is no time constraints on filing a Chapter 13 after a Chapter 7 discharge has been obtained. Furthermore, the previous chapter 7 discharge does not prevent a chapter 13 plan from being confirmed within six years of the previous discharge. *In re Baker,* 736 F.2d 481 (8th Cir.1984); *Id.; In re Stevenson,* 45 F.Supp. 709 (D.C.La.1942).

On August 10, 1989, the Court entered an order converting the Debtor's Chapter 13 case to a Chapter 7 liquidation. The

Court set a § 341 meeting of creditors for September 14, 1989, and set the bar date for filing objections to discharge, (§ 727) and dischargeability of debt, (§ 523(a)) as November 13, 1989. The Debtor commenced this adversary proceeding on November 13, 1989. The Department, however, did not raise the issue of the Debtor's right to a general discharge under § 727 until December 12, 1989, or after the November 13, 1989 bar date by raising the issue as an affirmative defense in its answer, rather than by a timely Adversary Complaint. (*See*, Bankr.R. 7001(4)).

■ The Department's answer raising the issue that the Debtor is not entitled to a § 727 general discharge is not really an affirmative defense, but represents a counterclaim, which is subject to any statutory limitations period. Federal Rules of Civil Procedure 8(c) as made applicable by Bankr.R. 7008 provides as follows:

(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. *When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.* (Emphasis supplied).

It is stated in 27 Fed.Proc.L.Ed., § 62.-186, *Pleadings and Motions*, as follows:

A counterclaim must be pleaded as fully and distinctly and with the same substantial requisites as an original cause of action. Similarly, the reply to a counter claim must be precisely as full and complete as an answer in an original suit.

FRCP 8(c), which is discussed elsewhere, provides that when a party has mistakenly designated a defense as a counterclaim or a counterclaim as a de-

fense, the court on terms, if justice so requires, must treat the pleading as if there had been a proper designation. Although as a matter of legal theory, a counterclaim is irrelevant to granting summary judgment on the complaint since it is not directed at the allegations of the complaint but rather is an independent claim for relief, it has been held that the federal courts are not "slaves to archaic rules of common law pleading.", and that the fact that a defendant's allegations are denominated a counterclaim rather than an affirmative defense need not be fatal to their relevancy to granting summary judgment, in view of FRCP 8(c). (Footnotes omitted). [*Citing, Office of Professional Employees International Union v. Allied Industrial Workers*, 397 F.Supp. 688 (E.D.Wis.1975), *aff'd.* 535 F.2d 1257 (7th Cir.).]

■ This Court has the obligation to treat a mistakenly designated defense as a counterclaim where justice so dictates. *Dennison Mfg. Co. v. Ben Clements and Sons, Inc.*, 467 F.Supp. 391 (D.N.Y.1979). In fact, a party may generally assert counterclaims against an opposing party in his initial response to an opposing party's claims, regardless of whether those claims are embedded in a complaint or an answer. *Index Fund, Inc. v. Hagopian*, 91 F.R.D. 599 (D.N.Y.1981).

In that the Court has treated the Department's affirmative defense as a counterclaim, it must now determine if it was timely asserted.

Again, 27 Fed.Proc.L.Ed. § 62.202, *Pleadings and Motions*, states as follows:

It has been held that a counterclaim in the nature of recoupment is never barred by the statute of limitations so long as the main action itself is timely, but that affirmative counterclaims may not be instituted after the applicable period of the statute of limitations has expired for the reason that such claims are regarded as independent causes of action. *Thus, where a counterclaim seeks to assert a separate cause of action for an independent wrong, it generally may not be instituted after the applicable statute*

*of limitations has expired.* However, there is authority that the plaintiff, by institution of his action, tolls the statute of limitations governing a compulsory counterclaim. (Emphasis supplied) (Footnotes omitted).

Inasmuch as the Department's counterclaim is based solely upon a federal statute, i.e., § 727(a)(8), rather than state law, that six year federal statute rather than any State law statute of limitations controls. *Id.* at § 62.202.

■ In addition, the Department's "counterclaim" by way of an affirmative defense is permissive pursuant to Fed. R.Civ.P. 13(b), rather than compulsory under Fed.R.Civ.P. 13(a), since it does not arise out of the transaction or occurrence that is the subject matter of the Debtor's complaint, i.e. the dischargeability of the debt to the Department pursuant to § 523(a)(5).[2] Thus, the Department's independent claim (objection) under § 727(a)(8) was not tolled by the filing of this adversary proceeding by the Debtor on the last date to object to discharge. *Cf., In re Thomas,* 47 B.R. 27, 30 (Bankr.S.D.Cal.

1984), *citing, In re Jones,* 560 F.2d 775, 779, 3 BCD 743 (7th Cir.1977); *In re Zweygardt,* 51 B.R. 214, 216 (Bankr.D.Colo. 1985).

The Seventh Circuit in *In re Jones,* 560 F.2d 775, 779, 3 BCD 743 (7th Cir.1977), in applying prior Bankruptcy Rule 409(a)(2). The predecessor to Bankruptcy Rule 4007(c) stated as follows:

[t]o hold that where another has already commenced an adversary proceeding on the debt the creditor must still commence another and parallel proceeding on what amounts to *a compulsory counterclaim* would make the language of the rules promote the very waste, duplication, and diseconomy the rules were designed to avoid. That the *affirmative relief prayed for in the answer* was not specifically denominated a counterclaim is not significant where, as here, the pleading is clear that such relief is sought.

*Id.* at 779 (Emphasis supplied).

Because the Department's counterclaim by way of an affirmative defense was not compulsory, and was filed after the bar date, its objection is not timely even though

---

**2.** Bankruptcy Rule 7013 applies Fed.R.Civ.P. 13 with certain modifications not relevant to the case at bar. Federal Rule of Civil Procedure 13(a) governs compulsory counterclaims and states as follows:

Rule 13. Counterclaim and crossclaim.
(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.* But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13. (Emphasis supplied). (Bankr.R. 7013 also provides that a party sued by a trustee or debtor-in-possession need not state as a counterclaim any claim that a party has against the debtor, the debtor's property, or the debtor's estate, unless the claim arose after the order of relief).

Whether a particular countercomplaint should be considered compulsory depends not

so much on the immediacy of the connection with the Plaintiff's claim as upon its logical relationship to that claim. *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278 (7th Cir.1980), *cert. granted* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 242 *reversed on other grounds; Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257 (7th Cir.1977). This test is to be applied flexibly in order to further the policies of the federal rules in general and Rule 13(a) in particular. *Id.*

"Transactions" within the purview of the compulsory counterclaim rule may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship; and thus, a transaction is to be construed generously to avoid unnecessary expense inherent in multiplicity of litigation. *Warshawsky v. Arcata Nat. Corp.,* 552 F.2d 1257, *supra.*

Permissive counterclaims are governed by Fed.R.Civ.P. 13(b) as made applicable by Bankr.R. 7013. Fed.R.Civ.P. 13(b) provides as follows:

(b) Permissive counterclaims.
A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

the Debtor's complaint was timely filed on the bar date.

It was held in *Basham v. Finance America Corp.*, 583 F.2d 918 (7th Cir.1978), *cert. den.* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89, and *cert. den.* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32, that a counterclaim generally may not be instituted after an applicable statute of limitations has expired where the counterclaim seeks to assert a separate cause of action for an independent wrong.

Bankruptcy Rule 4004 sets forth the 60 day time limit for filing a complaint objecting to a general discharge pursuant to § 727(a) and § 727(c)(1). That Rule in its relevant part states as follows:

Rule 4004. Grant or denial of discharge.

(a) Time for filing complaint objecting to discharge; notice of time fixed. In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). In a chapter 11 reorganization case, such complaint shall be filed not later than the first date set for the hearing on confirmation. Not less than 25 days notice of the time so fixed shall be given to all creditors as provided in Rule 3003(f) and to the trustee and the trustee's attorney.

(b) Extension of time. On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

(c) Grant of discharge. In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge, the court shall forthwith grant the discharge unless (1) the debtor is not an individual, (2) a complaint objecting to the discharge has been filed, or (3) the debtor has filed a waiver under § 727(a)(10). Notwithstanding the foregoing, on motion of the debtor, the court may defer the entry of an order granting a discharge for 30 days and, on motion within such period, the court may defer entry of the order to a date certain.

Collier on Bankruptcy states as follows:

*An objection to discharge may be raised prior to the deadline other than by complaint in an adversary proceeding, e.g., in a counterclaim to an adversary proceeding brought by the debtor against a creditor. However, once the deadline has passed, no party may seek to inject an objection to discharge into an ongoing adversary proceeding or seek to intervene in some other adversary proceeding to raise such an issue. And no party may amend a prior complaint to raise new objections to discharge not fairly raised by a complaint filed prior to the deadline, although at least one court has held that fraudulent concealment of grounds for the objection by the debtor may toll the deadline. Such situations will be rare, because of Rule 4004(c)'s mandate that the court grant the discharge forthwith once the deadline has passed. Once the discharge has been granted, the remedy where grounds for an objection have been fraudulently concealed is to seek revocation of the discharge.*

8 Collier on Bankruptcy, *Bankruptcy Rules,* ¶ 4004.03[3], p. 4004–9 (L. King 15th ed.) (footnotes omitted) (emphasis supplied). *See, e.g., In re Sanborn,* 29 B.R. 655, 658 (Bankr.Me.1983).

■ This time limit is to be strictly construed. The reported cases have consistently held that a creditor cannot file a complaint objecting to the Debtor's general discharge beyond the expiration of the bar date. *See, In re Harten,* 78 B.R. 252, 16 BCD 686 (9th Cir.BAP 1987), *citing, In re Couch,* 43 B.R. 56 (Bankr.E.D.Ark.1984), and *In re Kirsch,* 65 B.R. 297 (Bankr. N.D.Ill.1986); *In re Puente,* 49 B.R. 966 (Bankr.W.D.N.Y.1985); *Matter of Mosier,* 37 B.R. 406 (Bankr.N.D.Ga.1984); *In re Tuzzolino,* 71 B.R. 231 (Bankr. N.D.N.Y.1986); *Cf. In re Riso,* 57 B.R. 789 (D.N.H.1986).

■ In addition, it does not appear that the Court may act *sua sponte* to deny the

Debtor a general discharge. As Collier's observed:

Court May Order Investigation.

In order to curb the granting of discharges in collusive and fraudulent cases in which the creditors refrain from objecting, section 727(c)(2) provides that on request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge. *This section is derived from Section 14(d) of the Act. Under the Act, however, the court had the power to act sua sponte, while it may act under section 727(c)(2) of the Code only upon the request of a party in interest.* (Emphasis supplied).

4 Collier's on Bankr. ¶ 727.14 (15th ed. 1990). Section 727(c)(1) also limits who may object to the general discharge of a debtor. It states:

(c)(1) The trustee, a creditor, or the United States may object to the granting of a discharge under subsection (a) of this section.

Clearly the Court is not the trustee or U.S. Trustee, nor is it a "creditor" as defined by § 101(9). The Court may qualify as having the same rights as a creditor, trustee or U.S. Trustee under the language of § 105, inasmuch as the foregoing would seem to qualify as a "party in interest" in § 105 ("party in interest" is not defined by the Bankruptcy Code). Section 105 provides as follows:

§ 105 Power of court.

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a *party in interest* shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

However, § 105 speaks in terms of the power of the Court in carrying out or enforcing Court orders or rules or preventing abuse of process, and not to enforcing *sua sponte* the substantive rights which otherwise belong to the creditors, the trustee or the United States.

In addition, even if the Court had the power to raise § 727(a)(8), *sua sponte,* it would appear it would have to do so within the 60 day time limit as found in Bankr.R. 4004, the same as any other party in interest.

Further, § 109 relating to eligibility to be a Debtor, does not expressly limit or prohibit the granting of a general Chapter 7 discharge to one who has filed a Chapter 7 petition within six years previous to the filing of a petition. Section 109 states in its relevant part as follows:

§ 109. Who may be a debtor.

(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

(b) A person may be a debtor under chapter 7 of this title only if such person is not—

(1) a railroad;

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h)); or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

11 U.S.C. § 109(a), (b).

The Court has not unearthed any cases construing the § 727(a)(8) eligibility requirements as going to subject matter jurisdiction of the Court. However, in the context of Chapter 13 and § 109(g), the Courts have rather consistently held that lack of eligibility is not jurisdictional. *See, In re Wenberg,* 94 B.R. 631 (9th Cir.BAP 1988); *Rudd v. Laughlin,* 866 F.2d 1040 (8th Cir.1989); *In the Matter of Phillips,* 844 F.2d 230 (5th Cir.1988).

■ Therefore, the failure to file a timely objection is fatal to the Department's § 727 argument. The Debtor is thus entitled to a general discharge under § 727. The Court next turns to the issue of whether the Debtor's specific obligation to the Department is nondischargeable pursuant to § 523(a) notwithstanding his general discharge pursuant to § 727(a).

### E

*General Principles of Collateral Estoppel As They Apply to a § 523(a)(5) Nondischargeability Adversary Proceeding*

■ This Court as a general rule, must give full faith and credit to a state court judgment such as the order entered on November 30, 1987 by the Juvenile Division of the Lake County Superior Court. U.S. Const. Art. IV, § 1; 28 U.S.C. § 1738. While the state court entered a decision on the merits finding that the Debtor owes the Department a debt in the *amount* of $45,-081.91, this Court has jurisdiction to determine whether the debt is *dischargeable* under § 523(a)(5). However, the state court's determination as to the *amount* owed by the Debtor to the Department is entitled to collateral estoppel. This finding by the State Court cannot be set aside or modified by this Court.[3]

This court cannot overturn or modify the findings and conclusions of the state court

3. A *pre*-petition state court judgment does not have *res judicata* (claim preclusion) effect in a subsequent nondischargeability proceeding in the bankruptcy court arising out of the same facts under § 523(a)(2), (4), or (6) as to whether the debt is *nondischargeable* as the mere fact that a creditor has reduced his debt to judgment should not bar further inquiry as to the true nature of the debt. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Pelfy,* Case No. 83–40107 (*Coate v. Pelfy,* adversary no. 83–4048 (J. Lindquist, unpub. opin. and order, Bankr.N.D.Ind., March 6, 1987)). It is noted however, at footnote 10 of the *Brown v. Felsen* opinion, the Supreme Court indicated that the doctrine of collateral estoppel or issue preclusion may be applicable to prior state court judgments on the issue of nondischargeability, in a subsequent nondischargeability proceeding in the bankruptcy court, and would bar relitigation of those issues in the bankruptcy court in a subsequent nondischargeability proceeding if in adjudicating a state law question, a state court should determine, factual issues using standards identical to § 17 of the former Bankruptcy Act in the absence of counter-veiling statutory policy.

*Brown v. Felsen* dealt with the dischargeability of the type of debts described in sections 17(a)(2) and (4) of the predecessor Bankruptcy Act (now § 523(a)(2), and (4) of the present Bankruptcy Code). Section 17(c)(2) of the Act (as does § 523(c) of the present Code) also granted exclusive jurisdiction to bankruptcy courts to determine whether particular debts were dischargeable under sections 17(a)(2), (4) or (8) (§ 523(a)(2), (4) and (6) of the present Bankruptcy Code). As to § 523(a)(5), the state court has concurrent jurisdiction with the bankruptcy court. *Brown v. Felsen* does not prevent the bankruptcy court from giving *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) effect to a state court judgment or

order actually decided on the merits between the same two parties on the same issues as to the *validity, extent* or *amount* of the underlying state based claim arising out of a state court's proper exercise of its authority to adjudicate the respective rights and duties of the parties relating to the amount of the debt by virtue of a state court decree which would not preclude exercise of the Bankruptcy Court's jurisdiction in deciding whether such a marital debt is *nondischargeable* under § 523(a)(5). *See In re Comer,* 723 F.2d 737 (9th Cir.1984); *In re Hogan,* 47 B.R. 124 (Bankr.W.D.Wis.1984); *In Matter of Brown,* 56 B.R. 954, 958–959 (Bankr.E.D.Mich. 1986).

The Supreme Court in examining the full faith and credit clause and 28 U.S.C. § 1738 held that "a federal court must give to a state court judgment the same preclusive effect as would have been given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). This general rule is limited of course by *Brown v. Felsen, supra.* In Indiana a party to a judgment generally may not collaterally attack a final judgment of a court of competent jurisdiction when the record is regular on its face; such a judgment is entitled to full faith and credit by courts of coordinate jurisdiction until set aside, either by appeal or by a direct proceeding brought in the court rendering it for that purpose. *State of Indiana v. Dossett,* 368 N.E.2d 259, 262 (Ind. App. 1st Dist.1977). Where a court has jurisdiction of the subject matter and of the person of the Defendant and renders a judgment not in excess of the jurisdictional power of the court, no judgment it may render within the issues is void, however erroneous it may be. *Id.* at 262.

As stated in *Federated Department Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the *res judicata* or collateral estoppel "consequences of a final unappeal judg-

as the amount of the obligations as opposed to the nature thereof, no matter how erroneous the Debtor may believe they are, as jurisdiction of subject matter and the person was present in the state court, and the issue of the amount was litigated on the merits.

■ The Supreme Court in examining the full faith and credit clause and 28 U.S.C. § 1738 held that "a federal court must give to a state court judgment the same preclusive effect as would have been given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–82, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984).[4] This general rule is limited of

ment on the merits [are not] altered by the fact that the judgment may have been wrong."

However, while the state court judgment shall have issue preclusive or collateral estoppel effect in this court as to the validity, extent, and amount of the debt, even if clearly erroneous, this court still has concurrent jurisdiction with the State Court to determine whether it is nondischargeable under § 523(a)(5) since the state court clearly never decided that issue postpetition, and could not decide that issue prepetition.

In *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987) the Court further discussed the collateral estoppel effect of the state court judgment in a subsequent nondischargeability proceeding in the Bankruptcy Court and stated:

> Despite this guidance by the Supreme Court, there is disagreement among the courts regarding the collateral estoppel effect accorded state court judgments in bankruptcy proceedings involving dischargeability. Some courts, because of the bankruptcy courts' exclusive jurisdiction in determining dischargeability, will give no collateral estoppel effect to state court determinations, while other courts do apply collateral estoppel when the issue was litigated previously by the parties. *Compare In re Rahm,* 641 F.2d 755, 757 (9th Cir.) (a prior state court judgment has no collateral estoppel force on a bankruptcy court considering dischargeability, but may establish a prima facie case of nondischargeability), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); with *Matter of Shuler,* 722 F.2d 1253, 1256 (5th Cir.) ("collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided"), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Goss v. Goss,* 722 F.2d 599, 602–04 (10th Cir.1983), and *Matter of Ross,* 602 F.2d 604, 607 (3d Cir.1979) ("doctrine of collateral estoppel may be applicable to a dischargeability determination by the bankruptcy court"). The majority of courts apply collateral estoppel to dischargeability determinations where the state litigation actually and necessarily decided the relevant issue. *See Matter of Shuler,* 722 F.2d at 1256 ("that collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided— represents the predominant view of the other circuits that have considered the issue"). This result is, we believe, the appropriate one. As the Sixth Circuit noted in *Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981), "that Con-

> gress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts." Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments. *See, Id.* at 228. Thus, if the requirements for applying collateral estoppel have been satisfied, then that doctrine should apply to bar relitigation of an issue determine by a state court.

*Id.,* 831 F.2d at 1294–95.

4. Collateral estoppel (hereinafter: "issue preclusion") or "estoppel by verdict" as the doctrine is sometimes referred to in the State of Indiana, applies when a particular issue is adjudicated and then put into issue in a subsequent suit on a different cause of action between the parties or their privies; in such cases, former adjudication of the issue is held to bind the parties or their privies in subsequent litigation. (*Cf.* "Estoppel by judgment" as *res judicata* is sometimes referred to in Indiana). *Cox v. Indiana Subcontractors Ass'n., Inc.,* 441 N.E.2d 222, 226 (Ind. App.1982); *Gorski v. Deering,* 465 N.E.2d 759, 761–762 (Ind.App.4th Dist.1984). Where there was only one lawsuit, one trial, and one judgment, the doctrine of issue preclusion cannot apply. *Nation v. State,* 445 N.E.2d 565, 570 (Ind.App.1983).

The doctrine of issue preclusion precludes litigation of issues not causes of action. *In re Estate of Nye,* 157 Ind.App. 236, 299 N.E.2d 854, 863 (1973) *rehearing overruled,* 157 Ind.App. 236, 301 N.E.2d 786.

To establish issue preclusion by means of a prior judgment in Indiana the following elements must be shown:
1. A suit
2. A final judgment
3. Identity of subject matter
4. Identity of parties

*Butrum v. Wheeler,* 440 N.E.2d 1147, 1150 (Ind. App.2d Dist.1982).

Issue preclusion is allowed to prevent relitigation of any legal or factual issue that has been *actually litigated and determined* by a final judgment. *Frye v. United Steelworkers of America,* 767 F.2d 1216 (7th Cir.1985), *cert. den.* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461. For the purposes of application of issue preclusion,

course by *Brown v. Felsen,* discussed at footnote 1, *supra.* In Indiana a party to a judgment generally may not collaterally attack a final judgment of a court of competent jurisdiction when the record is regular on its face; such a judgment is entitled to full faith and credit by courts of coordinate jurisdiction until set aside, either by appeal or by direct proceeding brought in the court rendering it for that purpose. *State of Indiana v. Dossett,* 368 N.E.2d 259, 262 (Ind.App. 1st Dist.1977). Where a court

has jurisdiction of the subject matter and of the person of the Defendant and renders a judgment not in excess of the jurisdictional power of the court, no judgment it may render within the issues is void, however erroneous it may be. *Id.* at 262.

Here, the Plaintiff did not appeal the Juvenile Court finding and order of November 30, 1987, as to the amount found by the Court due by the Debtor to the Department. Thus, the Debtor cannot now collat-

it is not the similarity between the types of litigation or actions involved, but between factual issues and their roles in the respective actions that is important. *Id.*

In order for issue preclusion to apply the particular issue must have been adjudicated and put into issue in a *subsequent* suit on a *different cause of action* between the same parties or those in privity with them. *In re Marriage of Moser,* 469 N.E.2d 762, 765–766 (Ind.App.1st Dist.1984); *Indiana University v. Indiana Bonding Sur. Co.,* 416 N.E.2d 1275, 1283 (Ind.App. 1981); *State of Indiana Highway Commission v. Spendel,* 392 N.E.2d 1172, 1175 (Ind.App.2d Dist.1979).

The Indiana Tax Court has refused to apply the doctrine of collateral estoppel or issue preclusion to a default judgment. That Court in the case of *Porter's South Shore Cleaners v. State,* 512 N.E.2d 895 (Ind.Tax 1987), stated as follows:

[f]airness dictates that if the judgment is by default then the issue is not precluded in a subsequent suit. *See also, Grip-Pak, Inc. v. Illinois Tool Works, Inc.,* (7th Cir.1982), 694 F.2d 466, 469; *Frye v. United Steelworkers of America* (7th Cir.1985), 767 F.2d 1216, 1220. *See generally,* Annotation, *Doctrine of Res Judicata As Applied to Judgments By Default,* 128 A.L.R. 472 (1940); Annotation, *Doctrine of Res Judicata As Applied To Default Judgments,* 77 A.L.R.2d 1410 (1961) for discussion of the subject.[1]

---

[1] The Court would note that it is the law in Indiana that a default judgment is *res judicata* in the same cause of action (claim preclusion).

*Id.* at 898.

In Indiana mere errors of law do not deprive a court of its jurisdiction or open its judgment to collateral attack; such a judgment is voidable, and not void, and can only be corrected by direct appeal. *In re Marriage of Truax,* 522 N.E.2d 402, 405 (Ind.App.1988); *D.L.M. v. V.E.M.,* 438 N.E.2d 1023, 1028, 31 A.L.R.4th 336 (Ind.App.1982); *Town of St. John v. Home Builders Ass'n of Northern Indiana,* 428 N.E.2d 1299, 1302 (Ind.App.1981); *Krick v. Farmers and Merchants Bank of Boswell,* 151 Ind.App. 7, 279 N.E.2d 254, 260–61 (Ind.App.1972) *Cush-*

*man v. Warren–Sharf Asphalt Paving Co.,* 220 F. 857, 135 C.C.A. 289 (7th Cir.1915), *cert. den.,* 238 U.S. 621, 35 S.Ct. 603, 59 L.Ed. 1493.

However a judgment that is void on its face may be attacked in a collateral proceeding as well as directly. *City of Hammond, Lake County v. Northern Indiana Public Service Company,* 506 N.E.2d 49, 51 (Ind.App.1987), *rehg. den., trans. den; Christakis v. State,* 493 N.E.2d 471, 473 (Ind.App.1986); *Persinger v. Persinger,* 531 N.E.2d 502, 503 (Ind.App.1987); *Warner v. Young America Volunteer Fire Dept.,* 164 Ind. App. 140, 326 N.E.2d 831, 834–35 (Ind.App. 1975).

Under Indiana law, where a judgment is rendered without jurisdiction of the subject matter or without jurisdiction of the person, the judgment is void and not merely erroneous, and it may be attacked collaterally at any time. *In re V–1–D, Inc.,* 158 F.2d 964 (7th Cir.1946), *citing, Calumet Teaming and Trucking Co. v. Young,* 218 Ind. 468, 33 N.E.2d 109, 33 N.E.2d 583 (1941), *cert. den. Glover v. Coffing,* 331 U.S. 829, 67 S.Ct. 1352, 91 L.Ed. 1844. This Rule does not apply in all cases where there was some notice, or some writ and service, although defective. *National Malleable and Steel Castings Co. v. Goodlet,* 195 F.2d 8 (7th Cir.1952), *citing, Jackson v. State,* 104 Ind. 516, 3 N.E. 863 (1885), *cert. den., Carter v. Simpson,* 344 U.S. 837, 73 S.Ct. 47, 97 L.Ed. 651.

In addition, it is a general rule that fraud in obtaining a judgment destroys the jurisdiction of the court rendering such judgment. *Nardi v. Poinsatte,* 46 F.2d 347 (1931); *Guydon v. Taylor,* 115 Ind.App. 685, 60 N.E.2d 750 (Ind.App.1945). It has also been held that ordinarily a judgment obtained by fraud on the court or on a party to the action is not void, but only voidable where the fraud does not appear on the face of the record, but where it is shown that the issuance of service or return on the summons was procured by fraud, the judgment is void. *McKinney v. Bassett,* 115 Ind.App. 614, 61 N.E.2d 79 (Ind.App.1945).

Thus, where the court has general jurisdiction of the subject matter of the action and of the parties, its judgment, even if tainted with fraud, is merely voidable and remains binding on all parties until set aside by a direct proceeding for that purpose. *Juday v. Lantz,* 124 Ind.App. 552, 117 N.E.2d 382 (Ind.App.1954).

erally attack that court's findings as to the validity, amount or extent of his liability under that order even though is erroneous.

As stated in *Federated Department Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the *res judicata* or collateral estoppel "consequences of a final unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong."

While the Debtor has gone to great lengths in his complaint and countermotion for summary judgment to persuade this Court that the amount of the state court judgment is incorrect in its amount, entirely unjust and disputed, this Court is bound by the State Court's determination of the subsidiary fact of the *amount* owed to the Department as this issue was actually litigated on the merits in the State Juvenile Court, as the Debtor had every inducement to try that issue at that time, while he clearly did not have any such inducement, or indeed a need to litigate the § 523(a)(5) issue of dischargeability of the debt itself in the State Court. Thus, the Court will give collateral estoppel effect to the validity, extent, and amount of the debt, although this Court may still determine whether that amount is nondischargeable under § 523(a)(5).

F

### § 523(a)(5)

In determining whether the Debtor's obligation to the Department is nondischargeable, the Court must answer two inquiries in the affirmative: first, did Congress intend to include Juvenile Court orders within the purview of § 523(a)(5) as amended, and secondly, does the Juvenile Court order requiring the debtor to pay $45,081.91 to the Department constitute support within the meaning of § 523(a)(5)? The court finds in the affirmative as to both of these inquiries, and concludes that such debt is excepted from discharge.

Section 523(a)(5) as *presently* constituted provides as follows:

(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, *determination made in accordance with state or territorial law by a governmental unit,* or property settlement agreement, but not to the extent that—

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; (Emphasis added).

Section 523(a)(5) was amended by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, P.L. 99–554, October 27, 1986, ("U.S. Trustee Act") or after the filing of the Debtor's case, and added those words and phrases as emphasized above.

Section 523(a)(5) was also previously amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, July 10, 1984 ("BAFJA"), which added the phrases, *"or other court of record"* and "or any such debt which has been assigned by the Federal Government or to a State or any political subdivision of such State".

The Debtor filed his petition commencing this case on July 8, 1988, and thus, § 523(a)(5) as in effect *subsequent* to the BAFJA Amendments effective October 1, 1984, Pub.L. 98–353 Title III, Sec. 553, 98 Stat. 392, and subsequent to the U.S. Trustee Amendments effective 30 days after enactment [October 27, 1986], shall control.

The Department refers this Court to one of its prior decisions, *Lake County Depart-*

*ment of Public Welfare v. Burton,* slip op., Case No. 86–60694, Adv. No. 86–6177, —— B.R. —— (Bankr.N.D.Ind.1988) as authority for finding the debt nondischargeable. Since the issues involved in the cases are identical, this Court will rely on *Burton* and quote the opinion at length. There the Court stated as follows:

"The legislative history as to the intent of Congress in inserting the phrase, 'other orders of a court of record' in the 1984 Amendments of BAFJA is sparse at best. There are no Senate or House Reports or legislative statements as to its meaning or purpose. However, Senator Exon made the following statement regarding the Amendment:

Unfortunately, there is a significant loophole in the current law.

\* \* \* \* \* \*

Unfortunately, however, this section of the Bankruptcy Code makes no provision for child support payments when a child is born out of wedlock. The amendment I am offering today is identical to S. 2553, a bill which I introduced on April 11. It corrects this inequity by striking the limiting language, 'In connection with a separation agreement, divorce decree, or property settlement.' Under this revision, the security of support would depend on parentage rather than the marital status of the child's natural parents.

130 Cong.Rec.S. 6094 (May 32, 1984).

"Generally, the remarks of one senator are insufficient to establish legislative intent; *See Weinbeger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982). And statements made in floor debates are less authoritative than committee reports. *United States v. O'Brien,* 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968). Statements made by individual members going to 'meaning' of a statutory provision may only reflect the views of the particular speaker. *Chrysler Corp. v. Brown,* 441 U.S. 281, 311 [99 S.Ct. 1705, 1722, 60 L.Ed.2d 208] (1979). *O'Brien,* however, expressly allows consideration of floor debates. In addition, Senator Hyde's statement was not simply an

'isolated remark ... ambiguous in meaning.'

"Senator Hyde does not appear to be 'salting the mine' to 'create' a legislative history in the record. *See e.g., Regan v. Wald,* 468 U.S. 222 [104 S.Ct. 3026, 82 L.Ed.2d 171] (1984). Therefore, Senator Hyde's statement is of some weight. Based on the foregoing remark and the absence of any other legislative history, it appears that at a minimum Congress intended to make judgments by courts of record establishing paternity and support as non-dischargeable in bankruptcy under § 523(a)(5).

"The question remains as to whether the general phrase, 'other order of a court of record' encompasses the order of the juvenile court in this case at bar.

"The Court should avoid a construction of a statute that renders a portion of the statute superfluous. *Bird v. United States,* 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902).

"Absent a persuasive reason to the contrary, the Court should attribute to the words of a statute their common meaning. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981).

"In expounding a statute, the Court must not be guided by a simple sentence or a member of a sentence, but look to the provision of the whole law, and to its object and policy. *Offshore Logistics Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986).

"In divining the will of Congress, Courts must first refer to the language of the statute itself. Where the language of the statute is on its face clear, it is improper to look beyond it to accompanying legislative history in an effort to divine the intent of Congress or invent ambiguity. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). However, in *United States v. American Trucking Ass'n.* [*Ass'ns*], 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345, 1350–1351 (1940), an exception to the 'plain meaning' rule was apparently cre-

ated whereby it was held that if the plain meaning lead to absurd or futile results the Court will look beyond the words to the purpose of the act, and even where the plain meaning did not produce absurd results but merely an unreasonable one, plainly at variance with the policy of the legislation as a whole, the Court has followed the purpose rather than the written words.

"In a recent bankruptcy case, the Supreme Court in *Central Trust Co. v. Creditors' Committee (In re Geiger Enter., Inc.)* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1987), the Court quoted *Carminelli [Camenetti] v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) as follows:

> It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.

"Although the Supreme Court in *Central Trust* held that the language in question was unequivocal and plain, it still consulted the legislative history to support its conclusion.

"Since all statutory interpretation cases are seeking to find a way to interpret a statute sensibly, and all laws should receive a sensible construction, general terms should be limited in their application so as to not lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. *Hawaii v. Mankichi,* 190 U.S. 197, 213, 23 S.Ct. 787, 789 [47] L.Ed. 1016 (1903).

"The United States Supreme Court in *Mid Atlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) stated:

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that

intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.

*Id.* 106 S.Ct. at 760 *(quoting Swartz [Swarts] v. Hammer,* 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904)) (Citations omitted).

"The phrase, 'court of record' is not defined in the Code, the Bankruptcy Rules, or discussed in the legislative history. There is no doubt however, that the Lake Superior Court, Juvenile Division is a 'court of record'.

"The language of § 523(a)(5) is clear and unambiguous. This Court holds that the mere fact that one legislator expressed a concern over filling a gap in the previous legislation regarding paternity judgments is not a sufficient basis to construe the amendment as to 'other order of a court of record' as being limited in its application to only paternity judgments. To do so would produce an unfair and unreasonable result that would be contrary to the avowed overall policy behind § 523(a)(5), looking at that section as a whole. The phrase 'other order of court of record' thus should be construed according to its plain and common meaning. This Court concludes that the phrase 'or other order of court of record' would reasonably encompass an order of the juvenile court, and the plain meaning of that phrase would be perverted and unreasonable by any other interpretation, notwithstanding the legislative statement of one Senator, who appeared intent on filling a gap as to paternity judgments. The Court can conceive of no rationale based on logic, experience or policy to hold paternity judgments within the scope of § 523(a)(5), and Court orders such as the one before the Court as not within the scope of that section.

"The second issue in determining whether the county's claim is nondischargeable is whether its claim is in the nature of support pursuant to § 523(a)(5).

"The Court must look at the policy of the Bankruptcy Code, its predecessor the Bankruptcy Act relating to parental support duties, and the applicable case law in

determining the applicability of § 523(a)(5) to the obligation before the Court.

"Norton Bankruptcy Law and Practice, provides an informative discussion of the area of the dischargeability of child support and thus to put the matter in proper perspective, the Court will take the liberty of quoting from this treatise at length. Norton states as follows:

> Throughout the history of United States bankruptcy law, family support organizations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was 'merely declaratory' of existing law.[1]
>
> The current exception of spousal and child support is found in Code § 523(a)(5). The duty to support a present or former spouse or child is the principal interest protected by the section.[2] Whether a duty of support exists depends on state law;[3] whether an obligation based on that duty is nondischargeable depends on federal law.[4]
>
> If both the duty to support and the relationship between that duty and the debt whose dischargeability is questioned are clear, few problems are presented. In practice, however, it is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.
>
> The courts have taken different approaches in determining whether the obligation is based on the duty to support or not. The major federal court approach,[5] espoused by Judge Learned Hand, confines the inquiry to whether the obligation arose out of discharges, or in any way expresses, the duty of support. If that question is answered affirmatively, the form of obligation is disregarded and the obligation is excepted from discharge. The second approach,[6] followed by the majority of state courts, focuses on the form of the obligation, as well as on the intent of the parties or of the matrimonial court; occasionally courts following this approach also consider the dependent spouse's need for or use of the payment.

---

[1] *Westmore [Wetmore] v. Markoe*, 196 U.S. 68, 49 L.Ed. 390, 25 S.Ct. 172 (1904).

[2] Louiseaux, *Domestic Obligations in Bankruptcy*, 37 Journal Nat Assoc. Ref In Bank 68 at n 16 (July 1963).

The term 'support' includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a former spouse, maintenance owed to a legally separate spouse, and support owed to a spouse or child.

[3] Without a state-imposed duty to support another, any obligation purporting to be based on it is dischargeable. *See* § 27.57. Neither federal statute nor federal common law creates a duty to support another.

[4] Application of federal dischargeability standards is illustrated by cases based on Texas law which expressly forbids alimony or support awards to a divorced spouse. A duty that is sufficiently like the support duty has been found for federal dischargeability purposes. See § 27.58. *In re Warner*, 6 BCD 788, 5 BR 434 (BC D Utah, 1980).

[5] See § 27.59. [*Citing, In re Adams*, 25 F.2d 640 (2d Cir.1928), where Judge Hand propounded the rule that the underlying duty and not the terms of the obligation controls dischargeability].

[6] See § 27.60.

1 Norton Bankruptcy Law and Practice § 27.56, pp. 80–82.

"The Courts have consistently held that in the context of a Bankruptcy Discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by Federal Bankruptcy Law and not by state law. *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984); *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983); *In re Mencer*, 50 B.R. 80 (Bankr.E.D.Ark. 1985); *In re Seidel*, 48 B.R. 371 (Bankr. C.D.Ill.1984); *In re Yeates*, 44 B.R. 575 (D.C.D.Utah 1984) *aff'd.* 807 F.2d 874 (10th Cir.1986).

"State law, however, should be looked to by the Bankruptcy Court as a criteria in indicating whether a given award is in the

nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and thus nondischargeable. *In re Seablom,* 45 B.R. 445 (Bankr.D.N.D.1984); *In re Kagan,* 42 B.R. 563 (Bankr.N.D.Ill.1984). Thus, the Bankruptcy Court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. *In re Holland,* 48 B.R. 874 (Bankr.N.D.Tex.1984); *In re Vogt,* 14 B.R. 743 (Bankr.E.D.Va.1981). This is particularly true in light of the fact that there is no federal law of alimony and support and all domestic relations law is of state origin. *Matter of Holt,* 40 B.R. 1009 (S.D.Ga.1984); *In re Bonhomme,* 8 B.R. 645 (Bankr. W.D.Okla.1981).

"The label placed on an obligation by the parties or the Court is not necessarily determinative of its character as nondischargeable alimony, maintenance and support. *Matter of Story,* 36 B.R. 546 (Bankr. M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form or title. *In re Cowley,* 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention.

"The Court would also note some basic legal principles that apply to adversary proceedings instituted by a creditor to have a debt determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

"In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Marino,* 29 B.R. 797, *supra; In re Linn,* 38 B.R. 762 (BAP 9th Cir.1984).

"The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman,* 25 B.R. 545 (Bankr.S.D.Cal.1982).

"This is done to effectuate the fresh start policies of the Bankruptcy Code. *In re Levitan,* 46 B.R. 380 (Bankr.

E.D.N.Y.1985); *In re Nicolle* [*Nicoll*], 42 B.R. 87 (Bankr.N.D.Ill.1984).

"Although, the nondischargeability provision of the Bankruptcy Code has no provisions allocating the burden of proof brought under it, the creditor must establish that the debt is non-dischargeable. *In re Bowers,* 43 B.R. 333 (Bankr.E.D.Pa. 1984); *Matter of Reinstein,* 32 B.R. 885 (Bankr.E.D.N.Y.1983); *In re Paley,* 8 B.R. 466 (Bankr.E.D.N.Y.1981).

"The creditor objecting to discharge of a debt in Bankruptcy bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Marino,* 29 B.R. 797 at 799, *supra.*

"In the case at bar, the County is asserting its claim against the debtor pursuant to I.C. 31-6-4-18. The Juvenile Court ordered the Debtor to reimburse the County Department of Public Welfare for the monies it expended for the Debtor's child. The Juvenile Court apparently based its authority to order such payments upon I.C. 31-6-4-18 which provides as follows:

Sec. 18 (a) *The cost of any services ordered by the juvenile court for any child,* or the child's parent, guardian, or custodian, and the cost of returning a child under IC 31-6-10 *shall be paid by the county.* The county council shall provide sufficient funds to meet the court's requirements.

(b) *The parent or guardian of the estate of a child* adjudicated a delinquent child or a child in need of services is *financially responsible for any services ordered by the court* unless:

(1) the parent or guardian is unable to pay for them;

(2) payment would force an unreasonable hardship on the family; or

(3) justice would not be served by ordering payment.

\* \* \* \* \* \*

(e) The *juvenile court shall require the parent or guardian of the estate to reimburse the county* in a manner that will cause the least hardship.

(f) *If the parent* or guardian of the estate *defaults in reimbursing the coun-*

*ty,* or fails to pay any fee authorized by this article, the *juvenile court* may find the parent or guardian in contempt and may *enter judgment* for the amount due (Emphasis added).

"The County asserts that the Debtor's parental duty of support is primarily to the child and that the duty is discharged not by payment directly to the child but by payment to third parties who have furnished services to the child; the child's right to payment is to have the Debtor-parent reimburse the County for monies expended by it for his support and maintenance; and, since the County acted for the child, the monies would be owed by the child, who though is not the payee, is the obligee.

"This case is remarkably similar to a recent Colorado decision, in which the bankruptcy court held that Colorado's support statute constituted support within the purview of § 523(a)(5). *In re Huber,* 80 B.R. 531 (Bankr.D.Colo.1987). In *Huber,* the court held the debt owed by the debtor to the county pursuant to an adjudication of dependency and neglect regarding a minor child of the debtors for foster care support fees, arising from placement of debtor's minor child in custody of the court was nondischargeable support obligation pursuant to 11 U.S.C. § 523(a)(5). *Id.* The *Huber* court based its decision on two Colorado statutes. The First, C.R.S. § 19–1–103(24) concerns residual parental rights. It provides:

(24) 'Residual parental rights and responsibilities' means those rights and responsibilities remaining with the parent after legal custody, guardianship of the person, or both have been vested in another person, agency, or institution, including, but not necessarily limited to, the responsibility for support....

\* \* \* \* \* \*

"The second applicable statute reads:

(d) A decree vesting legal custody of a child or providing for placement of a child pursuant to section 19–2–103, 19–3–101.1, or 19–3–109 with an agency in which public moneys are expended *shall be accompanied by an order of the court which obligates the parent of the*

*child to pay a fee, based on the parent's ability to pay, to cover the costs of the guardian ad litem and of providing for residential care of the child.* When custody of the child is given to the county department of social services, such fee for residential care shall be in accordance with the fee requirements as provided by rule of the department of social services, and such fee shall apply, to the extent unpaid, to the entire period of placement. (Emphasis added).

"The *Huber* court stated:

The Debtors argue that the debt must indeed be owed "to" the child not the county otherwise it is dischargeable. Alternatively, the Debtors assert that the debt was somehow "assigned" to the county in contravention of § 523(a)(5)(A) thus making it dischargeable. The Debtors are incorrect on both counts.... debt is predicated on two Colorado statutes.

The first, C.R.S. § 19–1–103(24) concerns residual parental rights ...

The second applicable statute reads: ... C.R.S. § 193–115(4)(d). Pursuant to these statutes, this Court finds that the disputed debt herein is in the nature of child support and as such, is nondischargeable.

"This case is remarkably similar to *In re Morris,* 14 B.R. 217 (Bankr.D.Colo.1981) in which then Bankruptcy Judge Moore analyzed an analogous Colorado statute, C.R.S. § 14–10–116(1773) and § 523(a)(5), and determined that payments to a third party which benefited a child were nondischargeable in bankruptcy. Clearly, the Colorado General Assembly has legislated a parental duty to provide for the support of their minor children. A strict reading of § 523(a)(5) as 'to whom' payments are made defeats both the state statutes and the intent of the Code because 'obligations arising out of the family relationship and the stability generated thereby outweighs the general bankruptcy goal of a fresh start.' *Morris,* at 220. *See also, In re Lathouwers,* 54 B.R. 205 (Bankr.D.Colo. 1985).

"As to the issue of assignment the Debtors' arguments fail on two grounds. First,

§ 523(a)(5)(A) clearly excepts from its anti-assignment language those debts assigned to a political subdivision of the State. The County is certainly such an entity. *See also,* § 101(26). Furthermore, '[t]he Bankruptcy Code, in Section 523 has, by way of the 1984 amendments, made it clear that the policy of nondischargeability as to child support and alimony payments applies whether the claim is held by the former wife [or child[ or has been assigned to a governmental unit for collection.' *In re Davidson,* 72 B.R. 384, 388–389 (Bankr. D.Colo.1987). Second, no assignment occurred. The obligation is owed 'to' the County and here under the nondischargeability analysis *supra* the Debtors cannot prevail.

*Id.* at 532–533.

"Both the Colorado and the Indiana statutes clearly provide for the payment for the actual costs and expenses incurred in the support of the child by the relevant governmental unit, and are not merely punitive or penal in nature. The statutory fixing of a parent's liability to the governmental unit is premised upon their fundamental legal obligation to provide support for their children. Ind.Code 31–6–4–18 contains this obligation to the parent to pay the actual expenses and costs incurred as to children placed in foster care, because of the failure of the parents to fulfill their legal obligations. Hence, such statute is indeed in the nature of support and therefore nondischargeable.

"The debt owed to the county is not an assignment. The debt owed is one originally due to the county. Ind.Code 31–6–4–18 requires that the parent pay the county directly and not some other entity to which the debt could be subsequently assigned. Such payments have been held not to be in the nature of an assignment. *In re Huber,* 80 B.R. 531, 533 (Bankr.D.Colo.1987).

"Even if the payment to the county was found to be an assignment, it would still not impinge the dischargeability provision of § 523(a)(5). *In re Davidson,* 72 B.R. 384, 388–389 (Bankr.D.Colo.1987). The BAFJA Amendments have clarified that the dischargeability provisions as to child

support are not hindered by the fact that the claim has been assigned to a governmental unit. *Id.*

"The debtor's obligation owed to the county is thus in the nature of child support and hence the Court finds that such debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).

"It is not the manner or form in which the debt is established that determines whether a debt is nondischargeable as support, nor does the fact that the payee of the debt is one other than to whom the duty to support is originally owed necessarily controlling. The labels and titles affixed to the obligation are not controlling. The principal focus of the inquiry is whether the debt is substantively in the nature of a legal support obligation. The obligation in question clearly takes on that characteristic. The juvenile court order did not alter, modify or abrogate the primary and continuing duty to support by the debtor, or the right to support by the child, but merely provided a judicial vehicle by which those rights and duties were enforced through the county. The fact that the county is to be reimbursed for monies expended in fulfilling the debtor's support obligation, rather than the child being named the direct payee does not alter the essence of the debt, i.e. support for the Debtor's child.

"As noted by the Court in *In re Norris,* [*Morris*], 14 B.R. 217, 219–220 (Bankr. D.Colo.1981), for a debt to be nondischargeable as support it is only necessary that the duty of payment be one which the child is owed and not that the child be the payee-creditor. One may owe a duty of payment to another and yet fulfill that duty by actual payment to a third party. Focusing on the right to payment confuses form over substance. The right to payment is not synonymous with the right to require payment."

*Burton, supra.*

Similarly, the debt in this case to the Department is nondischargeable in the Debtor's chapter 7 proceeding as in the nature of support. *See also, In re Jones,* 94 B.R. 99 (Bankr.N.D.Ohio 1988).

The Court having reviewed the complaint and answer filed herein and the Department's Motion for Summary Judgment and the Debtor's Counter Motion for Summary Judgment together with the supporting memoranda and all of the relevant papers and documents of record, and having taken into consideration all admitted facts, the Court finds that no genuine issue of material fact exists pursuant to Fed.R.Civ.P. 56(c) in that the debtor is entitled to a general discharge under § 727(a), the debt owed to the Department in the amount of $45,081.91 is nondischargeable under 11 U.S.C. § 523(a)(5), and that the Department is entitled to a summary judgment as a matter of law.

It is therefore

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the Debtor to the Department in the sum of $45,081.91 pursuant to the Lake County Superior Court, Juvenile Division, Judgment under Cause No. J84–2234, is nondischargeable in the Debtor's bankruptcy pursuant to § 523(a)(5). And it is further,

ORDERED, ADJUDGED, AND DECREED, that the Debtor is granted a general discharge pursuant to § 727(a).