By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b).  See also 6th Cir. BAP LBR 8014-1(c).

File Name: 22b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: LANCE HERSCHEL HARRISON, JR.,

*Debtor.*

_____

THOMAS F. HADLEY, DDS, PLLC,

*Plaintiff-Appellee*,

*v.*

LANCE HERSCHEL HARRISON, JR.,

*Defendant-Appellant*.

No. 21-8008

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 3:20-bk-03443; Adv. No. 3:20-ap-90124—Charles M. Walker, Judge.

Argued:  February 1, 2022

Decided and Filed:  February 28, 2022

Before: BAUKNIGHT, CROOM, and STOUT, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Steven L. Lefkovitz, LEFKOVITZ & LEFKOVITZ, PLLC, Nashville, Tennessee,
for Appellant.    Austin L. McMullen, BRADLEY ARANT BOULT CUMMINGS LLP,
Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Steven L. Lefkovitz, LEFKOVITZ &
LEFKOVITZ, PLLC, Nashville, Tennessee, for Appellant.  Austin L. McMullen, BRADLEY
ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

SUZANNE H. BAUKNIGHT, Bankruptcy Appellate Panel Judge.

In this appeal, the debtor, Dr. Lance Herschel Harrison, Jr. ("Harrison" or "Debtor"), asserts that the bankruptcy court erred in granting summary judgment to Thomas F. Hadley, DDS, PLLC ("Hadley PLLC"), on its nondischargeability claims under 11 U.S.C. § 523(a)(2), (a)(4), and/or (a)(6).[1]

The bankruptcy court, noting the "tortured and litigious relationship" between Harrison and Hadley PLLC,[2] determined that the summary judgment record was "replete with evidence as to Harrison's intent and his intentional acts" and that summary judgment for nondischargeability should be entered. The debt at issue in this case arose when one of Harrison's companies, Pleasant View Dental Spa, PLLC ("Pleasant View"), purchased a dental practice from Hadley PLLC in December 2015. (Order Granting Pl.'s Mot. for Summ. J. [hereinafter "Summ. J. Order"] at p. 3, Adv. No. 3:20-ap-90124, ECF No. 30.) Hadley PLLC financed the sale of the practice to Harrison's company and retained a perfected security interest in tangible and intangible personal property. TNS Properties, LLC ("TNS"), a company related to Hadley PLLC, leased the physical premises to Pleasant View for continued operation of a dental practice at that location. After defaulting on its payments to Hadley PLLC and TNS, Pleasant View filed a chapter 11 petition for bankruptcy relief (case number 3:18-bk-06606) on October 1, 2018. Hadley PLLC and TNS then moved for relief from the automatic stay. The bankruptcy court entered an agreed order in the Pleasant View case, providing that, on certain conditions, title to the collateral would vest in Hadley PLLC. The vesting conditions were met so that title transferred to Hadley PLLC. Following this, Harrison directed his employees to remove at least some of Hadley PLLC's collateral from the dental practice premises, resulting in the bankruptcy

---

[1]Unless otherwise noted, all citations are to Title 11 of the United States Code.

[2]Although the parties to this proceeding appear to have an acrimonious relationship, the Panel commends counsel for their civility and collegiality evidenced by their interaction after oral argument before the Panel.

court's holding Harrison, individually, in contempt in the Pleasant View case. After Harrison filed for individual bankruptcy protection in July 2020 (case number 3:20-bk-03443), Hadley PLLC filed a nondischargeability action to recover damages caused by Harrison's contemptuous conduct.

Because the Panel concludes that the bankruptcy court properly entered summary judgment for Hadley PLLC under § 523(a)(4) based on the record before it, the Panel AFFIRMS the judgment of the bankruptcy court.

## ISSUES ON APPEAL

On appeal, Harrison challenges the bankruptcy court's summary judgment determination that Harrison's debt to Hadley PLLC was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and/or (a)(6).[3]

## JURISDICTION AND STANDARD OF REVIEW

Because the United States District Court for the Middle District of Tennessee has authorized appeals to the Panel and no party has timely filed to have this appeal heard by the district court, the Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). An order granting summary judgment and a bankruptcy court's determination of nondischargeability are final orders for purposes of appeal. *Dantone v. Dantone* (*In re Dantone*), 477 B.R. 28, 31 (B.A.P. 6th Cir. 2012) (citations omitted).

---

[3]In his Statement of Issues to be Raised on Appeal, Harrison listed three issues. First, he asserted that summary judgment could not be granted without his oral testimony. Second, he asserted that the bankruptcy court relied on testimony and facts from a related case that were not made a part of the record in the present case. Finally, he argued that his intent could not be inferred in the absence of oral testimony. Harrison did not develop the first two arguments in his appellate briefs. Accordingly, they are deemed waived and will not be addressed by the Panel. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

Grants of summary judgment and determinations of dischargeability are both conclusions of law that are reviewed de novo. *Med. Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 389 (6th Cir. 2008); *Trudel v. U.S. Dep't of Educ.* (*In re Trudel*), 514 B.R. 219, 222 (B.A.P. 6th Cir. 2014) (citation omitted). "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Winters v. Shulman* (*In re Winters*), 503 B.R. 434, 436 (B.A.P. 6th Cir. 2013) (citations omitted); Fed. R. Civ. P. 56(a).[4] When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). This Panel must view the facts and all resulting inferences in a light most favorable to Harrison as the non-movant to decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

The party seeking summary judgment, as well as the party opposing summary judgment, must support all factual assertions or denials by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish

---

[4]Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056.

the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A) and (B).[5] Of particular importance to this case, a court may consider a fact undisputed for summary judgment purposes when the non-moving party merely states that he lacks knowledge or information sufficient to either admit or deny a fact. *See* Fed. R. Civ. P. 56(e)(2); *Canganelli v. Lake Cty. Ind. Dep't of Pub. Welfare* (*In re Canganelli*), 132 B.R. 369, 376 (Bankr. N.D. Ind. 1991) ("[W]here affiant alleges to be without information to admit or deny the allegations contained in the Movant's affidavit, and demands strict proof thereof, at best the response asserts a mere suspicion or theoretical question of fact that is insufficient to raise a genuine issue of fact."); *accord CIT Bank, N.A. v. Escobar*, No. 16-CV-3722, 2017 WL 3614456, at *5 (E.D.N.Y. June 16, 2017); *Brigance v. Vail Summit Resorts, Inc.*, No. 15-cv-1394, 2017 WL 131797, at *3 n.1 (D. Colo. Jan. 13, 2017); *OneWest Bank, N.A. v. Louis*, 15-CV-00597, 2016 WL 3552143, at *5 (S.D.N.Y. June 22, 2016); *Coleman v. Redmond Park Hosp., LLC*, No. 4:12-CV-255, 2013 WL 12095222, at *1 (N.D. Ga. Dec. 4, 2013), *rev'd on other grounds*, 589 F. App'x 436 (11th Cir. 2014).

The Panel bears no responsibility for searching the record sua sponte for genuine issues of material fact. Instead, the nonmoving party must "designate" such "specific facts." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, in response to Hadley PLLC's motion for summary judgment, which was supported by 166 statements of material fact not in dispute, each of which included citations to the record, Harrison was required to prove that there were genuine disputes of material fact for trial. In so doing, he was not entitled to rely solely on allegations or denials in the pleadings. Reliance on a "mere scintilla of evidence in support of the nonmoving party" is insufficient to raise a genuine dispute as to material facts. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).

---

[5]In addition, Middle District of Tennessee Local Bankruptcy Rule 7056-1(b) provides that "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) *demonstrating that the fact is disputed*." (Emphasis added.)

**FACTS**

Notwithstanding the requirements of Federal Rule of Civil Procedure 56(c) (hereinafter "Rule 56") and Middle District of Tennessee Local Bankruptcy Rule 7056-1(b), in response to some of Hadley PLLC's factual assertions, Harrison merely "denied" the fact (Def.'s Statement of Opp'n to Undisputed Material Facts in Opp'n to Mot. for Summ. J. [hereinafter "Opp'n Statement"] at ¶¶ 51-53, 55-56); "denied" the fact with an explanatory statement (*id*. at ¶¶ 17, 25, 29-30); "denied" the fact with a statement that he had insufficient knowledge or information to respond (*id*. at ¶¶ 26, 42-46, 57-63, 65-66, 68, 70-76, 78-84, 86-90, 93-94, 97-98, 100-06, 108-09, 117-19, 121-27, 130, 132, 138, 140, 152, 155-57, 159-66); or failed to supply any response (*id*. at ¶¶ 5, 38, 54, 69, 85, 120, 136, 147, 149). Harrison's Opposition Statement did not include any citations to the record as required by Rule 56(c)(1)(A) but instead was supported solely by an affidavit in which Harrison generally adopted the "response to the motion for summary judgment; the memorandum prepared on [his] behalf in opposition to the motion for summary judgment, and the opposition to the statement of undisputed facts in the motion for summary judgment," stating that "[t]o the best of [his] knowledge, information, and belief, the response and statements made therein on [his] behalf are true and correct." (Aff. of Lance Harrison at ¶¶ 2-3, Adv. No. 3:20-ap-90124, ECF No. 21-2.)

For purposes of summary judgment, Harrison's assertions that he lacked sufficient information or knowledge to admit or deny stated facts were insufficient to challenge Hadley PLLC's stated facts. Fed. R. Civ. P. 56(e). Accordingly, the Panel will summarize the facts that either were admitted by Harrison or to which he did not respond sufficiently or at all. *See, e.g.*, *Taylor v. Methodist Le Bonheur Healthcare*, No. 2:19-cv-02796, 2021 WL 2934596, at *2 (W.D. Tenn. June 22, 2021) (citations omitted) ("To the extent [the non-movant] has failed to demonstrate a dispute with [the movant's] facts because [he] lacks sufficient information to do so, those facts are deemed undisputed.").

Hadley PLLC sold its dental practice to Pleasant View in December 2015. (Opp'n Statement at ¶¶ 1-3.) Harrison is the chief officer, president, and chief manager of Pleasant View, and he executed the sale documents on behalf of Pleasant View. (*Id*. at ¶¶ 6-7.) Hadley PLLC retained a perfected security interest in the assets sold, which included all tangible

personal property (i.e., all equipment, furnishings, computers, and phone systems) and all intangible personal property (i.e., all proprietary and confidential information and software and all records, files, lists, licenses, and phone numbers purchased from Hadley PLLC) (collectively, "the Property"). (*Id.* at ¶ 4.) Pleasant View continued to operate the dental practice purchased from Hadley PLLC at the same physical location (the "Premises") by leasing the property from TNS. (*Id.*)

Pleasant View defaulted on its obligations to Hadley PLLC and TNS. (*Id.* at ¶ 8.) Just before a scheduled state court hearing on TNS's detainer warrant, Pleasant View filed a voluntary chapter 11 bankruptcy petition.[6] (*Id.* at ¶¶ 10-11.) Hadley PLLC and TNS filed a motion for stay relief in Pleasant View's bankruptcy case on October 3, 2018, through which Hadley PLLC sought to enforce its security interest in the Property and TNS sought to enforce its rights regarding the Premises. (*Id.* at ¶¶ 12-13.) Although the motion was set for hearing on October 23, 2018, the parties resolved the motion, and the bankruptcy court entered an Agreed Order for Relief from Stay and Abandonment (hereinafter "Agreed Stay Relief Order") on November 2, 2018.[7] (*Id.* at ¶¶ 14-15.)

The Agreed Stay Relief Order required Pleasant View, *inter alia*, to pay past and current rent and to file a motion under § 363 for sale of "substantially all" of Pleasant View's assets. (Agreed Stay Relief Order at ¶¶ 2-4, Bankr. Case No. 3:18-bk-06606, ECF No. 48.) The Agreed Stay Relief Order expressly provided that if stay relief became effective under the terms of the order,[8] "title to the Property shall vest in Hadley [PLLC], with all applicable notices, notice periods and rights to redeem the Property . . . waived." (*Id.* at ¶ 7.) The Agreed Stay Relief Order further provided: "This vesting shall cause the obligations of the Debtor to Hadley

---

[6]Harrison's other companies also filed voluntary bankruptcy petitions, which the bankruptcy court jointly administered. (Opp'n Statement at ¶ 7.)

[7]The Agreed Stay Relief Order was filed in the adversary proceeding in Harrison's individual bankruptcy case (Adv. No. 3:20-ap-90124, ECF No. 40) and designated by Hadley PLLC as part of the record on appeal. (Adv. No. 3:20-ap-90124, ECF No. 41.)

[8]Harrison's counsel acknowledged at oral argument before the Panel that stay relief was effected by the Agreed Stay Relief Order. Indeed, the record reflects that stay relief and abandonment became effective under the terms of the Agreed Stay Relief Order on entry of the order on November 2, 2018, because Pleasant View had failed to pay rent when it was due on November 1, 2018. (Agreed Stay Relief Order at ¶ 3; Opp'n Statement at ¶¶ 15-16.)

[PLLC] to be partially satisfied in the amount of $188,305.23, and any remaining indebtedness and obligations of the Debtor to Hadley [PLLC] shall remain outstanding." (*Id.*) Finally, on vesting, Pleasant View was required to surrender to Hadley PLLC and TNS the Property and the Premises. (*Id.* at ¶ 8.)

When Pleasant View failed to surrender the Property and Premises as required by the Agreed Stay Relief Order,[9] Hadley PLLC filed several contempt motions, resulting in the bankruptcy court holding Harrison – as an individual – in contempt and ordering him to pay costs and attorney fees. (Tr. of Dec. 4, 2018 H'rg in Bankr. No. 3:18-bk-06603 [hereinafter "Dec. 4 Tr."] at 55:2, Adv. No. 3:20-ap-90124, ECF No. 14-8; Order Granting Expedited Mot. to Compel Performance by the Pleasant View Debtor under Court Order, Requiring the Pleasant View Debtor to Show Cause Why it Should Not be Held in Contempt, Holding the Pleasant View Debtor in Contempt for Violating Court Order, for Appointment of Trustee, to Convert the Case to Chapter 7 and/or for Appointment of Patient Care Ombudsman [hereinafter "Contempt Order"], Bankr. No. 3:18-bk-06603, ECF No. 80.[10])

Harrison admitted that he removed items of Property from the Premises beginning on November 30, 2018, the day after Hadley PLLC filed the first contempt motion, and that he specifically told employees to "pack and move everything that was not attached to the floor or wall" and to take "everything that was not bolted down." (Opp'n Statement at ¶¶ 33, 35, 36.) Harrison asserted, however, that he "only authorized the removal of assets that he did not believe or understand [were] subject to [Hadley PLLC's] security agreement." (*Id.* at ¶ 33; *see also id.* at

---

[9]Harrison's "denial" with an explanatory statement that he "did everything in his power to comply with the order of this Court," with no reference to any action he took to "comply" with the requirement that he surrender the Property and Premises is a "mere denial" that is insufficient under Rule 56(c) to create a genuine issue of material fact concerning whether Harrison surrendered the Property and Premises as required by the Agreed Stay Relief Order. In fact, the record makes clear that the Agreed Stay Relief Order required Harrison to surrender the Property and Premises "immediately" upon the effectiveness of stay relief (i.e., on entry of the Agreed Stay Relief Order on November 2, 2018) (Agreed Stay Relief Order at ¶ 3; Opp'n Statement at ¶¶ 15-16), and that Harrison did not shut down the Pleasant View dental practice and begin vacating the building until November 30, 2018. (Opp'n Statement at ¶¶ 33-34.)

[10]Although the Contempt Order was not included in the record on appeal, it was referenced by Hadley PLLC and acknowledged by Harrison in the Opposition Statement. (Opp'n Statement at ¶ 114.) The Panel also takes judicial notice of the Contempt Order and other filings in both Pleasant View's and Harrison's bankruptcy cases as authorized by Federal Rule of Evidence 201(c)(1). *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004).

¶¶ 35-37.) Harrison also admitted that an autoclave used to sterilize equipment was missing from the Premises when Hadley PLLC and TNS regained possession and that an autoclave in Harrison's Clarksville office previously had stopped working. (*Id*. at ¶¶ 47-50.) Despite this admission, Harrison denied (without explanation or citation to the record) affidavit testimony of two former employees who asserted that Harrison told them that the working autoclave from the Pleasant View Premises would be swapped with the inoperable one in Clarksville. (*Id*. at ¶¶ 51-55.)

Although Harrison acknowledged that he knew by at least November 26, 2018, that Hadley PLLC planned to reopen the dental practice in the Pleasant View location, Harrison sent an email to Pleasant View's patients on November 30, 2018, stating, "We will still be keeping our phone number the same for any of our patients have [*sic passim*] questions or needs to be seen which you can contact us @615-746-3700 while we build our New facility." (*Id*. at ¶¶ 18, 107.) Harrison denied knowing that the telephone number was part of the Property he was required to turnover. (*Id*. at ¶ 106.) The Agreed Stay Relief Order, however, expressly defined the Property that would vest if stay relief became effective to mean the collateral identified in Hadley PLLC's UCC financing statement that was attached as an exhibit to Hadley PLLC's stay relief motion. (*See* Agreed Stay Relief Order at p. 1, n.1.) The UCC financing statement expressly included "telephone numbers" in the definition of "intangible personal property." (UCC Financing Statement at Ex. A, ¶ (b), Bankr. No. 3:18-bk-06606, ECF No. 7-4.) The Contempt Order, entered December 11, 2018, also expressly required the immediate turnover of the telephone number. (Contempt Order at ¶ 5(b); *see also* Opp'n Statement at ¶ 114.)

Hadley PLLC filed a second contempt motion on December 14, 2018, which initially was heard on December 18, 2018. (Opp'n Statement at ¶¶ 141-42.) At the direction of the bankruptcy court, the parties and their counsel conferred in the bankruptcy court's conference room and identified remaining issues and created an agreed-upon "to-do list." (*Id*. at ¶¶ 143, 145, 146.) Hadley PLLC sent several updated requests in the days following the December 18th hearing, culminating in a December 28, 2018 updated request for the still-missing items that had been listed in the agreed-upon to-do list. (*Id*. at ¶¶ 147-51.) The December 28th request included operable inter-oral cameras, Isolite systems, eStylus units, power cords, and a Canon

camera.  (*Id.* at ¶ 151.)  Hadley PLLC "also informed Harrison that the transfer of the phone number had not been done correctly by [Pleasant View, which] further delay[ed] the installation of working phones at the Premises."  (*Id.*)  Although Harrison had "returned some phones on December 7, 2018, . . . the phones that Harrison returned were not the phones that were part of Hadley [PLLC]'s Property."  (*Id.* at ¶ 119.)  The returned phones "were not the phones that the Court had ordered Harrison to return," which is why they "were completely incompatible with the phone [system] at the Premises" and "would not ring."  (*Id.* at ¶¶ 120-22, 124.)  As a result, Hadley PLLC had to purchase a new phone system and new phones, which significantly hindered Hadley PLLC's ability to reopen a dental practice at the Premises.  (*Id.* at ¶¶ 125-26.)

Hadley PLLC's security interest also included "all proprietary and confidential information and software, and all records, files, lists, licenses and phone numbers purchased." (*Id.* at ¶ 4.)  Thus, the Agreed Stay Relief Order required Pleasant View to surrender such items immediately as of November 2, 2018.  Notwithstanding Harrison's knowledge that Hadley PLLC intended to reopen a dental clinic at the Premises, Harrison's email to clinic patients stated that the clinic was "relocating" them to Harrison's Clarksville or Hendersonville offices, that the clinic would retain the same phone number, and that it would soon open a new location in Pleasant View.  (*Id.* at ¶¶ 19-20, 128.)  On December 2, 2018, Harrison also posted a sign on the door of the Premises stating that Pleasant View was "permanently closed" but that Harrison would open a new facility in the same area, and that, until that time, patients were being "relocat[ed]" to Harrison's Clarksville or Hendersonville offices.  (*Id.* at ¶ 129.)

In a *non sequitur* response to Hadley PLLC's statements of fact,[11] Harrison asserted that Hadley PLLC did not have a lien on "Debtor's company's customers" and that "Plaintiff had no legal right to the medical records of the Plaintiff."  (*Id.* at ¶¶ 20, 25.)  In a seeming contradiction, Harrison admitted that Hadley PLLC's security interest included "all proprietary and confidential

---

[11]Harrison's assertion that "Plaintiff had no lien on the customers of [Pleasant View]," was in response to Hadley PLLC's statement that made clear that it intended to serve patients who had been receiving care by Pleasant View at the Premises.  (Opp'n Statement at ¶ 20.)  Similarly, Harrison's statement that Hadley PLLC had "no legal right to the medical records" was in response to Hadley PLLC's statement that it had requested patient records to serve the patients after Pleasant View shut down its practice.  (*Id.* at ¶ 25.)  Notably, Harrison provided no record citation for either assertion.

information and software, and all records, files, lists, licenses and phone numbers purchased from Hadley PLLC." (*Id.* at ¶ 4.)

At the December 4, 2018 hearing on Hadley PLLC's initial contempt motion, Harrison asserted that he had refused to turn over the patient records because he believed that HIPAA[12] prohibited it.[13]  (*Id.* at ¶ 27.)  In response to this assertion, "Hadley [PLLC] provided the [bankruptcy c]ourt with legal authority explaining that no violation of HIPAA would occur if . . . Pleasant View . . . and Harrison were required to turn over the patient data." (*Id.* at ¶¶ 27-28.[14]) Still, the bankruptcy court expressed concern about compliance with HIPAA and directed the parties to include "detailed information on the steps that will be necessary to comply with HIPAA" in the order resolving the contempt motion.[15]  (Dec. 4 Tr. at 54:10-12.)  By the time the Contempt Order was entered on December 11, 2018, Harrison had already turned over to Hadley PLLC the server with the patient records.[16]  (Opp'n Statement at ¶ 31.)

After the initial hearing on the second contempt motion on December 18, 2018, Hadley PLLC obtained several extensions of its deadline to notify the bankruptcy court of any remaining issues. (Bankr. No. 3:18-bk-06603, ECF Nos. 102, 111, 119, 138, 147, 156, 161.)  Hadley PLLC eventually filed a supplemental brief on its second motion for contempt on February 8, 2019 (Suppl. Br., Bankr. No. 3:18-bk-06603, ECF No. 163), but for unknown reasons, the second motion to compel remained inactive on the bankruptcy court's docket until June 30, 2020, when

---

[12]Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of title 42 of the United States Code).

[13]Harrison, however, failed to cite to his testimony at the December 4, 2018 hearing in his Opposition Statement.

[14]In his Opposition Statement, Harrison admitted that Hadley PLLC provided the court with this legal authority at the December 4, 2018 hearing.

[15]At the conclusion of the December 4, 2018 hearing, the bankruptcy court directed Hadley PLLC's attorney to draft an order memorializing the court's bench ruling.

[16]Harrison continues to assert in this appeal that because of his HIPAA concerns, he did not possess a willful and malicious intent in retaining the records.  (Appellant's Br. at p. 2, BAP Case No. 21-8008, ECF No. 12.) Notably, although the bankruptcy court considered Harrison's failure to turn over patient records in its malice analysis under § 523(a)(6), the court did not award damages for failure to return the records. (Summ. J. Order at pp. 3-6.)

the court issued a notice of hearing for July 21, 2020. (Notice of Hearing, Bankr. No. 3:18-bk-06603, ECF No. 238.)

On the morning of July 21, 2020, just before the hearing on the second contempt motion, Harrison filed an individual chapter 7 bankruptcy petition. (Bankr. No. 3:20-bk-03443.) On August 21, 2020, Hadley PLLC initiated its adversary proceeding to obtain a nondischargeable judgment for damages caused by Harrison's actions with respect to Pleasant View.

The bankruptcy court granted summary judgment to Hadley PLLC on April 6, 2021, and Harrison timely filed this appeal on April 19, 2021.

## DISCUSSION

Courts construe 11 U.S.C. § 523(a) actions liberally in favor of debtors and strictly against creditors, who bear the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998). A determination of nondischargeability under § 523(a)(4)[17] requires a showing that the debt was incurred by embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity.

Embezzlement within the scope of § 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citation omitted). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.* at 1173.

Similarly, larceny is the fraudulent misappropriation of property; however, it differs from embezzlement because possession of the property was never lawful. *First Nat'l Bank v. Simerlein* (*In re Simerlein*), 497 B.R. 525, 537 (Bankr. E.D. Tenn. 2013).

---

[17]Because the Panel concludes that summary judgment was appropriate on Hadley PLLC's claim under § 523(a)(4), it need not consider whether the bankruptcy court's summary judgment was proper under § 523(a)(2)(A) or (a)(6) and does not reach those issues in this opinion. *See Dixon v. Univ. of Toledo*, 702 F.3d 269, 277 (6th Cir. 2012); *Davis v. Ocwen Fed. Sav. Bank* (*In re Haviaras*), 266 B.R. 792, 800 (N.D. Ohio 2001).

> [L]arceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner. Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner. As distinguished from embezzlement, the original taking of the property must be unlawful. Larceny is commonly understood to be synonymous with theft. For example, larceny occurs when a thief breaks into a home and steals jewelry for the purpose of converting it to cash for his/her own use.

*Morganroth & Morganroth, PLLC v. Stollman* (*In re Stollman*), 404 B.R. 244, 271 (Bankr. E.D. Mich. 2009) (citation omitted).

Thus, under § 523(a)(4), debts are nondischargeable when they result "from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement." *Woodbourne Inv., LLC v. Boyd* (*In re Boyd*), Adv. Proc. No. 17-5015, 2019 WL 948347, at *9 (Bankr. E.D. Tenn. Feb. 22, 2019) (citation omitted). "Both larceny and embezzlement under § 523(a)(4) require an element of fraudulent intent." *Long v. Piercy* (*In re Piercy*), 21 F.4th 909, 914 (6th Cir. 2021) (internal quotation marks and citations omitted). "The 'fraud' required under § 523(a)(4) is 'fraud in fact, involving moral turpitude or *intentional* wrong.'" *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (emphasis in original) (citations omitted).

The intent and misappropriation necessary to sustain a claim under § 523(a)(4) may be proven by circumstantial evidence. *WebMD Practice Servs., Inc. v. Sedlacek* (*In re Sedlacek*), 327 B.R. 872, 880 (Bankr. E.D. Tenn. 2005). A showing of deceit satisfies the fraud element, and the court may deduce fraudulent intent "from the relevant circumstances." *Powers v. Powers* (*In re Powers*), 385 B.R. 173, 179-80 (Bankr. S.D. Ohio 2008); *see also Whitcomb v. Smith* (*In re Smith*), 572 B.R. 1, 16 (B.A.P. 1st Cir. 2017) ("Because the intent to defraud is rarely proven by direct evidence, courts assess this element using a totality of the circumstances approach to discern the debtor's subjective intent."); *Marrama v. Citizens Bank of Mass.* (*In re Marrama*), 445 F.3d 518, 522 (1st Cir. 2006) ("Evidence of fraud is conclusive enough to support summary judgment . . . when it yields no plausible conclusion but that the debtor's intent

was fraudulent."). Circumstances that indicate fraud for embezzlement purposes include when "the debtor had sole access to the creditor's [property], and despite knowing that the creditor wanted the [property] returned, surreptitiously took [it] for his own benefit." *Zamora v. Jacobs* (*In re Jacobs*), 403 B.R. 565, 575 (Bankr. N.D. Ill. 2009) (citing *Rainey v. Davenport* (*In re Davenport*), 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006)).

Although Harrison argues that the bankruptcy court wrongfully inferred the requisite intent for willful and malicious conduct under § 523(a)(6),[18] "vehemently" denying such ill intent, his only argument before this Panel concerning the § 523(a)(4) claim is that he "was not a fiduciary; did not commit larceny; and did not commit embezzlement." (Appellant's Br. at pp. 7, 9, 11-12, BAP Case No. 21-8008, ECF No. 12.) Through this insufficiently developed argument,[19] Harrison complains about the bankruptcy court's conclusion that he committed both larceny and embezzlement, asserting as fallacious the bankruptcy court's logic "that title had transferred from [Pleasant View] to [Hadley PLLC]." (*Id.* at p. 10.) This assertion, however, wholly ignores the terms of the Agreed Stay Relief Order, which expressly vested title to the Property in Hadley PLLC. (Agreed Stay Relief Order at ¶ 7.) Harrison's assertion that he believed the items removed "were not subject to [Hadley PLLC's] security agreement" (Opp'n Statement at ¶ 35), without further explanation, especially given that Pleasant View and Harrison were represented by counsel at all relevant times (*id.* at ¶¶ 19, 23, 30, 112), failed to create a genuine issue of material fact concerning Harrison's fraudulent intent in removing and appropriating the Property, regardless of whether he (1) lawfully possessed the Property as the chief officer and president of Pleasant View (so that his conduct constituted embezzlement) or (2) had no right to possess or remove the Property without the consent of Hadley PLLC as its

---

[18]Harrison also asserts concerning the § 523(a)(6) claim that there was "no showing that any of the equipment was sold or ever appeared or was used in another location." (Appellant's Br. at p. 7, BAP Case No. 21-8008, ECF No. 12.) He makes this argument notwithstanding the unrefuted sworn testimony of his employees contained in the record.

[19]Issues not properly developed are waived on appeal. *Church Joint Venture, L.P. v. Bedwell* (*In re Blasingame*), 598 B.R. 864, 873-74 (B.A.P. 6th Cir. 2019) (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)).

rightful owner under the terms of the Agreed Stay Relief Order (so that his conduct constituted larceny).[20]

In his appellant's reply brief, Harrison relies for the first time[21] on Article 9 of the Uniform Commercial Code as adopted in Tennessee in arguing that "you cannot embezzle from yourself." (Appellant's Reply Br. at pp. 5-6, BAP Case No. 21-8008, ECF No. 19.) Harrison states, "[t]o accept this proposition [that the circumstances indicate fraud], the [Agreed Stay Relief Order] requiring [Harrison] to turn over the Property to Hadley [PLLC] [had to have] transferred title, ownership, or negated any of the rights afforded [Harrison] in Article IX [*sic*] of the Uniform Commercial Code." (*Id.*) Indeed, the Agreed Stay Relief Order expressly provided that Pleasant View waived its state-law rights under Article 9: "Immediately upon the effectiveness of stay relief and abandonment as provided in paragraph 1 of this order, title to the Property shall vest in Hadley [PLLC], *with all applicable notices, notice periods and rights to redeem the Property are* [*sic*] *waived*." (Agreed Stay Relief Order at ¶ 7 (emphasis added).)

The unrefuted summary judgment record is clear. As of November 2, 2018, the Property vested in Hadley PLLC. (*Id.* at ¶ 7.) On November 26, 2018, Hadley PLLC (through counsel) requested that Harrison and Pleasant View turn over specific items that were necessary to operate the dental practice. (Opp'n Statement at ¶ 23.) The request sought such turnover on or before November 29, which was the date that a state-court judgment for possession of the Premises would become final. (*Id.*) Hadley PLLC filed the first contempt motion before the bankruptcy court on November 29, 2018. Thereafter, on November 30, 2018, Harrison, with knowledge that the Agreed Stay Relief Order vested ownership of the Property in Hadley PLLC, directed his

---

[20]The Panel need not delineate between Harrison's actions as embezzlement or larceny. It is undisputed that Harrison was lawfully in possession of the Property before November 1, 2018, when default occurred under the terms of the Agreed Stay Relief Order. After default and entry of the Agreed Stay Relief Order, however, the Property was deemed abandoned; title was vested in Hadley PLLC, with Pleasant View waiving its state-law rights; and Pleasant View, through Harrison, was required immediately to surrender the Property and Premises to Hadley PLLC. (Agreed Stay Relief Order at ¶¶ 1, 7-8.) Thus, as of November 2, 2018 (i.e., entry of the Agreed Stay Relief Order), Pleasant View, through Harrison, no longer lawfully possessed the Property or the Premises.

[21]This argument was not raised to the bankruptcy court or in Harrison's appellant's brief. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997) (citation omitted). Though the Panel could deem such argument waived, we will address it as patently meritless.

employees to "pack and move everything that was not attached to the floor or wall" and to take "everything that was not bolted down," in addition to placing a sign on the door of the Premises to direct patients to Harrison's other locations. (*Id.* at ¶¶ 33, 35, 36, 129.)

As to specific items of equipment for which damages were awarded by the bankruptcy court, Harrison did not deny or dispute that the autoclave was missing from the Premises on December 2, 2018 (*id.* at ¶ 48); nor did he deny the sworn statement of his former employees that "[t]he plan was to bring the broken[22] Clarksville Autoclave to the Pleasant View location and leave it for Dr. Hadley." (*Id.* at ¶ 54; Decl. of Amber Carpenter at ¶ 9, Adv. No. 3:20-ap-90124, ECF No. 14-3; Decl. of Ashley Mayo at ¶ 3, Adv. No. 3:20-ap-90124, ECF No. 14-4.) Notwithstanding the fact that Harrison asserted that the autoclave was returned to the Premises on December 4, 2018,[23] he failed to return the power cord until January 9, 2019. (Opp'n Statement at ¶ 64.) Additionally, Harrison admitted that he was ordered to turn over the phone number to Hadley PLLC and that the phones he turned over were not the ones that the bankruptcy court had ordered him to return. (*Id.* at ¶¶ 114, 120.)

Other facts that are deemed admitted by Harrison's failure to comply with Rule 56(c) that bear on the circumstances pointing to Harrison's fraudulent intent include Harrison's removal of three intra-oral (USB) cameras and six digital sensors from the Premises and taking them to use in his office in Clarksville while returning to Hadley PLLC six broken sensors and three broken cameras, with only one power cord. (*Id.* at ¶¶ 66-83.) Harrison also removed three working eStylus units and the associated hand-pieces and replaced them with broken units and hand-pieces. (*Id.* at ¶¶ 84-87, 89.) Hadley PLLC also established that Harrison (1) removed specialized power cords, five Isolite systems, a Canon Rebel T41 camera and lens, two Cavitron scalers, and several telephones; (2) returned only one of the scalers; and (3) returned phones that

---

[22]The autoclave at the Clarksville location had stopped working before Pleasant View ceased operations in November 2018. (Opp'n Statement at ¶ 50.)

[23]Carpenter's unrefuted testimony was that the operating autoclave was in her vehicle until December 4, 2018 (which was the hearing date of the first contempt motion filed by Hadley PLLC), when she was directed by Harrison to immediately return it to the Premises. (*Id.* at ¶¶ 57-61; Carpenter Decl. at ¶ 9, Adv. No. 3:20-ap-90124, ECF No. 14-3.)

were not part of Hadley PLLC's Property and were incompatible with the phone hardware at the Premises.  (*Id*. at ¶¶ 88, 90-94, 97-98, 100-06, 119, 121, 124-25.)

Additional evidence of Harrison's fraudulent intent may be found in his testimony at the December 4, 2018 hearing that the items removed from the Premises consisted of "[t]hings relating to papers, files from – belonging to Synergy[;] [e]quipment that was in the practice prior to us getting there has been left there[;] [f]ixtures have been left there[;] [c]omputers have been left there[;] [m]onitors have been left there[;] [b]ut just regular things that we use like gloves, masks, supplies that we use to see patients, those things were removed."  (Dec. 4 Tr. at p. 32:9-15.)  On cross-examination, Harrison testified that the autoclave sterilizer was removed but that "the autoclave that has been repaired is [being] returned to the facility as of today" and that other "hand pieces" had been sent out for repair in the "couple weeks" before Pleasant View vacated the Premises.  (*Id.* at pp. 35-38.)  Harrison's vague testimony,[24] however, did not contradict the sworn statements from his employees that the autoclave in Clarksville had stopped working and that Harrison had directed them on December 1, 2018, to take the working autoclave that they removed from the Premises to the Clarksville location.  (Carpenter Decl. at ¶ 9, Adv. No. 3:20-ap-90124, ECF No. 14-3; Decl. of Ashley Mayo at ¶ 3, Adv. No. 3:20-ap-90124, ECF No. 14-4; Decl. of Sarah Gano at ¶ 2, Adv. No. 3:20-ap-90124, ECF No. 14-5.)

Further, Harrison admitted that as of November 29, 2018, he had not complied with the Agreed Stay Relief Order and was refusing to turn over Hadley PLLC's Property; that Hadley PLLC provided him with a list of still-missing items to be turned over on December 7, 2018; and that Hadley PLLC requested turnover of the phone number and missing items on December 10 and 11, 2018, leading to the filing of Hadley PLLC's second contempt motion on December 14, 2018.  (Opp'n Statement at ¶¶ 131, 135-37, 139, 141-42.)  Harrison also admitted that notwithstanding the bankruptcy court's direction on December 18, 2018, to work with Hadley

---

[24]Notably, although Hadley PLLC supplied the December 4, 2018 hearing transcript as part of the summary judgment record, Harrison did not cite to his testimony from that hearing in responding to the summary judgment motion or in briefing this appeal.  Neither the bankruptcy court nor this Panel have a duty to comb through the attachments to discover evidence creating a genuine issue of material fact.  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405-06 (6th Cir. 1992).  In any event, Harrison's ambiguous testimony at the December 4, 2018 hearing does not counter the specific sworn statements of his employees.

PLLC to resolve the issues regarding turnover of the Property, he failed to turn over all of the Property as of January 10, 2019, despite numerous requests from Hadley PLLC to do so. (*Id.* at ¶¶ 143-51, 153-54.) Harrison finally responded on February 5, 2019, that he could not find the remaining missing Property. (*Id*. at ¶ 158.)

The summary judgment record consists of ample evidence from sworn declarations, bankruptcy court orders, photographs, and a transcript of court proceedings. Harrison countered Hadley PLLC's submissions only by a general, "vehement" denial with no explanation for his actions,[25] which amounts to nothing more than a "mere scintilla of evidence" that is insufficient to overcome a motion for summary judgment that otherwise is supported by record evidence. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also In re Jacobs*, 403 B.R. at 575 (citing *In re Davenport*, 353 B.R. at 200) (noting that fraudulent intent for embezzlement can be shown when the debtor, despite knowing that a creditor wanted funds returned, "surreptitiously took them for his own benefit."); *First State Ins. Co. v. Bryant* (*In re Bryant*), 147 B.R. 507, 512 (Bankr. W.D. Mo. 1992) (citation omitted) (determining that the elements of embezzlement are (1) appropriation of property for the debtor's benefit by deceit; (2) holding such property in a manner only accessible by the debtor; and (3) the debtor's use of the property without explanation).

Although not raised by Harrison in relation to the § 523(a)(4) claim, he argues that the bankruptcy court "failed to take into account that [Hadley PLLC] expected return of the collateral in its original condition without wear and tear." (Appellant's Br. at p. 6, BAP Case No. 21-8008, ECF No. 12.) "Wear and tear" was not at issue in this case; Hadley PLLC never complained about the condition of the Property. Rather, the issue was that Hadley PLLC's Property had been *removed* at Harrison's direction.

Harrison also argues that the bankruptcy court "failed to give [him] any credit for the items that were actually returned" and that "there was no proof in the record as to any valuation."

---

[25]Even if embezzlement were the appropriate basis for the § 523(a)(4) claim, Harrison offered no facially plausible explanation for his conduct in removing the Property from the Premises. *See* 4 *Collier on Bankruptcy* ¶ 523.10[2] (16th ed.) ("The required elements of embezzlement are: (1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds *without explanation of reason or purpose*.") (emphasis added).

(*Id.* at pp. 8-9.) Like many of Harrison's other arguments, the summary judgment record contradicts this claim. Specifically, Hadley PLLC provided the following undisputed[26] values as to the items of Property that were missing from the Premises:

- three intra-oral (USB) cameras valued at $12,000.00 (Opp'n Statement at ¶¶ 66-68);

- six digital sensors valued at $48,000.00 (*id.* at ¶¶ 76-78);

- three eStylus units valued at $18,000.00[27] (*id.* at ¶¶ 84-86);

- five Isolite system units valued at $7,500.00 (*id.* at ¶¶ 90-93);

- one Canon Rebel T4I camera and lens valued at $1,600.00[28] (*id.* at ¶¶ 99-101);

- one Cavitron scaler valued at $4,000.00[29] (*id.* at ¶¶ 102-04);

- the telephone system valued at $1,100.00 (*id.* at ¶ 125);

- lost income totaling $65,000.00 during December 2018 and reduced production during January 2019 "caused by delays and disruptions caused by Harrison" (*id.* at ¶¶ 162-65); and

- attorney's fees and expenses totaling $21,371.50 (*id.* at ¶ 166).

The bankruptcy court awarded total damages of $167,621.50.[30] (Summ. J. Order at p. 7.)

In this case, it is clear that the summary judgment record was replete with evidence of Harrison's intent as to the Property. This evidence firmly provided a basis for the bankruptcy court conclusion that the $167,621.50 debt Harrison owed to Hadley PLLC was

---

[26]Once again, the Panel finds that Harrison's response that he lacked insufficient knowledge to admit or deny is deemed an admission for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2); *In re Canganelli*, 132 B.R. at 376 ("[W]here affiant alleges to be without information to admit or deny the allegations contained in the Movant's affidavit, and demands strict proof thereof, at best the response asserts a mere suspicion or theoretical question of fact that is insufficient to raise a genuine issue of fact.")

[27]The bankruptcy judge included in his damages calculation only $6,000.00 based on an error in Hadley PLLC's brief. (Mem. in Supp. of Mot. Summ. J. at p. 29; Adv. No. 3:20-ap-90124, ECF No. 15.)

[28]The bankruptcy judge included in his damages calculation only $2,800.00 based on an error in Hadley PLLC's brief. (*Id.*)

[29]The bankruptcy judge included in his damages calculation only $3,850.00 based on an error in Hadley PLLC's brief. (*Id.*)

[30]Damages supported by the summary judgment record actually total $178,581.50, but Hadley PLLC did not appeal the dollar amount of the damages award.

nondischargeable pursuant to § 523(a)(4).  Accordingly, the Panel affirms the bankruptcy court's nondischargeability determination under § 523(a)(4) and award of damages.

Because the § 523(a)(4) analysis is dispositive, the Panel finds it unnecessary to address the bankruptcy court's analyses under subsections (a)(2) and (a)(6) of § 523.

## CONCLUSION

For the reasons set forth above, the Panel AFFIRMS the grant of a nondischargeable summary judgment in Hadley PLLC's favor for Harrison's embezzlement and/or larceny of Hadley PLLC's Property under 11 U.S.C. § 523(a)(4), consisting of damages totaling $167,621.50.  Accordingly, the Order Granting Plaintiff's Motion for Summary Judgment entered by the Bankruptcy court on April 6, 2021, is AFFIRMED in accordance with this Opinion.